1

**BRUNO W. TARABICHI**, CA State Bar No. 215129
btarabichi@owenstarabichi.com

2

**OWENS TARABICHI LLP**
111 N. Market St., Suite 730

3

San Jose, California 95113
Telephone:  408.298.8200

4

Facsimile:  408.521.2203
*Pro Hac Vice* Application Pending

5

**PUOY K. PREMSRIRUT**, State Bar No. 7141

6

puoy@brownlawlv.com
**PUOY K. PREMSRIRUT, ESQ. INC.**

7

520 S. Fourth Street, Second Floor
Las Vegas, NV 89101

8

Telephone:  702.384.5563
Facsimile:  702.385.1752

9

10

Attorneys for Plaintiff
Russell Road Food and Beverage, LLC

11

UNITED STATES DISTRICT COURT

12

DISTRICT OF NEVADA

13

SOUTHERN DIVISION

14

15

RUSSELL ROAD FOOD AND
BEVERAGE, LLC, a Nevada limited

16

liability company

17

                    Plaintiff,

18

          vs.

19

MIKE GALAM, an individual; VICTOR
GALAM, an individual; JACQUELINE

20

GALAM BARNES, an individual;
CANICO CAPITAL GROUP, LLC, a

21

California limited liability company;
ABRAHAM ASSIL, an individual;

22

GEORGE ESHAGHIAN, an individual;
DJAVID HAKAKIAN, an individual;

23

MORRIS NEJATHAIM, an individual;
HAMED YAZDANPANAH, an

24

individual; SOLEIMAN NAZARIAN, an
individual; ISAAC JAVDANFAR, an

25

individual; KAMRAN SAMOOHA, an
individual, MEHRAN SADIGHPOUR, an

26

individual; WEST BEST CAPITAL
GROUP, LLC, a Delaware limited liability

27

company; SEFOX INVESTMENT, LLC, a
California limited liability company;

28

OLYMPIC CAPITAL VENTURE, LLC, a

**PLAINTIFF RUSSELL ROAD FOOD AND BEVERAGE, LLC'S VERIFIED COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT, STATE TRADEMARK INFRINGEMENT, STATE TRADEMARK DILUTION, AND CANCELLATION OF STATE TRADEMARK REGISTRATION**

**DEMAND FOR JURY TRIAL**

Delaware limited liability company; EL MARINO, LLC, a California limited liability company; KNOTTING HILL, LLC, a California limited liability company; SN & GE, LLC, a California limited liability company; IJ PROPERTIES, LLC, a California limited liability company; S DOUBLE, LLC, a California limited liability company; INDUSTRIAL ROAD 2440-2497, LLC, a Nevada limited liability company; RHINO BARE PROJECTS LLC, a California limited liability company; RHINO BARE PROJECTS 4824 LLC, a California limited liability company; CRAZY HORSE TOO GENTLEMEN'S CLUB LLC, a Nevada limited liability company; and DOES 1 – 50, inclusive,

Defendants.

Plaintiff Russell Road Food and Beverage, LLC ("Russell Road" or "Plaintiff"), by its attorneys, for its Complaint in this action alleges:

**PARTIES**

1.     Russell Road is a Nevada limited liability company having its principal place of business at 3550 West Quail Avenue, Las Vegas, Nevada 89118.

2.     Defendant Mike Galam ("Galam") is an individual who claims to be a manager of Canico Capital Group, LLC ("Canico") and majority owner of Canico by virtue of his ownership or control of Rhino Bare Projects LLC ("Rhino"), an entity that Galam asserts now owns 59.993% of Canico.  Galam is also the manager of Rhino and the manager and a member of Crazy Horse Too Gentlemen's Club LLC ("Crazy Horse Too GC") with a 10% ownership interest, as well as the manager and/or controlling owner of Rhino Bare Project 4824 LLC ("Rhino 4824").

3.     Defendant Victor Galam is an individual who is the father of Galam.   On information and belief, Victor Galam is a member of Crazy Horse Too GC with an 85% ownership interest.

4.     Defendant Jacqueline Galam Barnes ("Barnes") is an individual who is the sister

of Galam.  On information and belief, Barnes is a member of Crazy Horse Too GC with a 5% ownership interest.

5.     Defendant Canico is a California limited liability company having its principal place of business at 1000 S. Westgate Avenue, Suite 100, Los Angeles, California 90049.  Canico is the managing member of Defendant Industrial Road 2440-2497, LLC ("Industrial Road") and on information and belief, wholly owns Industrial Road.

6.     Defendant Industrial Road is a Nevada limited liability company that has designated its registered agent with the Secretary of Nevada as Michael S. Mushkin at 4475 S. Pecos Road, Las Vegas, Nevada 89121.  Mr. Mushkin is also an attorney for Canico.

7.     Defendant Abraham Assil ("Assil") is an individual and a manager of Canico and West Best Capital Group, LLC ("West Best").  On information and belief, Assil is a driving force and principal decision maker for both Canico and West Best.

8.     George Eshaghian ("Eshaghian") is an individual who was and/or is still the manager of Canico.  In addition, Eshaghian is the manager of SN & GE, LLC ("SN & GE"). Eshaghian is a driving force and principal decision maker for both Canico and SN & GE.

9.     Djavid Hakakian ("Hakakian") is an individual and the manager of El Marino, LLC ("El Marino").  Hakakian is the driving force and principal decision maker for El Marino.

10.     Morris Nejathaim ("Nejathaim") is an individual and the manager of Sefox Investment, LLC ("Sefox").   Nejathaim is the driving force and principal decision maker for Sefox.

11.     Hamed Yazdanpanah ("Yazdanpanah") is an individual and manager of Knotting Hill, LLC ("Knotting Hill").  Yazdanpanah is a driving force and principal decision maker for Knotting Hill.

12.     Soleiman Nazarian ("Nazarian") is an individual and a manager of SN & GE. Nazarian is a driving force and principal decision maker for SN & GE.

13.     Isaac Javdanfar ("Javdanfar") is an individual who is both a member of Canico and manager of IJ Properties, LLC ("IJ Properties").  Javdanfar is a driving force and a principal decision maker for IJ Properties.

RUSSELL ROAD'S COMPLAINT

1    14.    Kamran Samooha ("Samooha") is an individual who is a member of Canico.

2    15.    Mehran Sadighpour ("Sadighpour") is an individual who is both a member of

3    Canico and a member of S Double, LLC ("S Double").   Sadighpour is a driving force and a

4    principal decision maker for S Double.

5    16.    West Best is a California limited liability company having its principal place of

6    business at 1000 South Westgate Avenue, #100, Los Angeles, California 90049.  West Best is a

7    member of Canico.

8    17.    Sefox is a California limited liability company having its principal place of

9    business at 1128 South Los Angeles Street, Los Angeles, California 90015.  Sefox is a member of

10   Canico.

11   18.    Olympic Capital Venture, LLC ("Olympic Capital") is a Delaware limited liability

12   company.  On information and belief, the members of Olympic Capital consist of the same initial

13   members of Canico.

14   19.    El Marino is a California limited liability company having its principal place of

15   business at 410 S. Beverly Drive, Beverly Hills, California 90212.  El Marino is a member of

16   Canico.

17   20.    Knotting Hill is a California limited liability company having its principal place of

18   business at 9454 Wilshire Boulevard, 6th Floor, Beverly Hills, California 90212.  Knotting Hill is

19   a member of Canico.

20   21.    SN & GE is a California limited liability company having its principal place of

21   business at 9454 Wilshire Boulevard, 6th Floor, Beverly Hills, California 90212.  SN & GE is a

22   member of Canico.

23   22.    IJ Poperties is a California limited liability company having its principal place of

24   business at 777 E. 15th Street, Los Angeles, California 90021.  IJ Properties is a member of

25   Canico.

26   23.    S Double is a California limited liability company having its principal place of

27   business at 9454 Wilshire Boulevard, 6th Floor, Beverly Hills, California 90212.  S Double is a

28   member of Canico.

RUSSELL ROAD'S COMPLAINT

24. Rhino is a California limited liability company having its principal place of business at 100 West Broadway, Suite 100, Glendale, California 91203. Galam and Rhino assert that Rhino now owns 59.993% of Canico.

25. Rhino 4824 is a California limited liability company having its principal place of business at 100 West Broadway, Suite 100, Glendale, California 91203 (the same address as Rhino). Galam has attempted and continues to attempt to orchestrate a sale of the real property located at 2466 Industrial Road, Las Vegas, Nevada from Canico to Rhino 4824.

26. Crazy Horse Too GC is a Nevada limited liability company, which was recently formed on December 18, 2012 by Galam. Crazy Horse Too GC's principal place of business is unknown but it lists its Registered Agent as United States Corporation Agents, Inc. at 500 N. Rainbow Boulevard, Suite 300A, Las Vegas, Nevada 89107.

27. Each of the Defendants has participated in and is in some manner responsible for the acts described in the instant Complaint and the damage resulting therefrom. Specifically, each Defendant has knowingly directed, authorized, or participated in Defendants' infringing use of the CRAZY HORSE TOO mark.

28. On information and belief, each of the managers and members of Canico are the alter ego of Canico and Industrial Road (which is wholly owned by Canico) and there exists a unity of interest and ownership such that any separateness between them has ceased to exist, in that each of the managers and members has completely controlled, dominated, managed, and operated Canico and Industrial Road since their formation for their own personal benefit.

29. On information and belief, Galam is the alter ego of Rhino, Crazy Horse Too GC, and Rhino 4824 and there exists a unity of interest and ownership such that any separateness between them has ceased to exist, in that Abraham Assil has completely controlled, dominated, managed, and operated Rhino, Crazy Horse Too GC, and Rhino 4824 since their formation for his own personal benefit.

30. On information and belief, Victor Galam and Barnes are the alter ego of at least Crazy Horse Too GC (and perhaps some of the other entities listed as Defendants in this action) and there exists a unity of interest and ownership such that any separateness between them has

RUSSELL ROAD'S COMPLAINT

ceased to exist, in that Victor Galam and Barnes have completely controlled, dominated, managed, and operated Crazy Horse Too GC since its formation for their own personal benefit.

31.     On information and belief, Abraham Assil is the alter ego of Canico and West Best and there exists a unity of interest and ownership such that any separateness between them has ceased to exist, in that Abraham Assil has completely controlled, dominated, managed, and operated Canico and West Best since their formation for his own personal benefit.

32.     On information and belief, Canico and its managers and members are the alter ego of Industrial Road and there exists a unity of interest and ownership such that any separateness between them has ceased to exist, in that Canico and its managers and members have completely controlled, dominated, managed, and operated Industrial Road since its formation for their own personal benefit.

33.     On information and belief, Eshaghian and Nazarian are the alter ego of SN & GE and there exists a unity of interest and ownership such that any separateness between them has ceased to exist, in that Eshaghian and Nazarian have completely controlled, dominated, managed, and operated SN & GE since its formation for their own personal benefit.

34.     On information and belief, Hakakian is the alter ego of El Marino and there exists a unity of interest and ownership such that any separateness between them has ceased to exist, in that Hakakian has completely controlled, dominated, managed, and operated El Marino since its formation for his own personal benefit.

35.     On information and belief, Nejathaim is the alter ego of Sefox and there exists a unity of interest and ownership such that any separateness between them has ceased to exist, in that Nejathaim has completely controlled, dominated, managed, and operated Sefox since its formation for his own personal benefit.

36.     On information and belief, Yazdanpanah is the alter ego of Knotting Hill and there exists a unity of interest and ownership such that any separateness between them has ceased to exist, in that Yazdanpanah has completely controlled, dominated, managed, and operated Knotting Hill since its formation for his own personal benefit.

RUSSELL ROAD'S COMPLAINT

37.     On information and belief, Javdanfar is the alter ego of IJ Properties and there exists a unity of interest and ownership such that any separateness between them has ceased to exist, in that Javdanfar has completely controlled, dominated, managed, and operated IJ Properties since its formation for his own personal benefit.

38.     On information and belief, Sadighpour is the alter ego of S Double and there exists a unity of interest and ownership such that any separateness between them has ceased to exist, in that Sadighpour has completely controlled, dominated, managed, and operated S Double since its formation for his own personal benefit.

39.     On information and belief, the managers and members of Olympic Capital (which are the same as the members of Canico) are the alter ego of Olympic Capital and there exists a unity of interest and ownership such that any separateness between them has ceased to exist, in that the managers and members have completely controlled, dominated, managed, and operated Olympic Capital since its formation for their own personal benefit.

40.     Russell Road is ignorant of the true names of the other Defendants sued herein as Does 1 – 50, inclusive, and therefore, sues these Doe Defendants by such fictitious names. Additional Doe Defendants are likely to include, among others, any additional members of members of the corporate entities listed as Defendants.  Russell Road will amend this Complaint to allege their true names and capacities when ascertained.

## JURISDICTION AND VENUE

41.     This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331, 1338(a) and (b), and 1367, 15 U.S.C. § 1121, as this action involves substantial claims arising under the U.S. Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq*., combined with related and supplemental claims for state trademark infringement, trademark dilution, and cancellation of a state trademark registration.

42.     Defendants are subject to personal jurisdiction in this district because Defendants conduct substantial, continuous, and systematic activities in this judicial district and because Russell Road's causes of action contained herein arise out of or result from Defendants' contacts with this judicial district.

RUSSELL ROAD'S COMPLAINT

43.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

**FACTS RELEVANT TO ALL CLAIMS**

**Plaintiff Russell Road's adoption, use, and ownership of the CRAZY HORSE III mark**

44.     On or about September 4, 2009, Russell Road opened a gentlemen's club under the CRAZY HORSE III name in the Playground complex, a 40,000 square foot complex in Las Vegas.  The club is located at 3525 West Russell Road, Las Vegas, Nevada.

45.     Russell Road uses the CRAZY HORSE III name and mark both as a standard character mark (i.e., a trademark consisting solely of the words CRAZY HORSE III witout a design element) and as part of a design logo that features three horses and the words CRAZY HORSE III GENTLEMEN'S CLUB   (both marks are collectively referred to herein as the "CRAZY HORSE III mark").

46.     When Russell Road decided to adopt and use the CRAZY HORSE III mark, there were no other gentlemen's clubs in Las Vegas operating under a name that consisted of or included CRAZY HORSE.  In fact, there had not been a gentlemen's club operating in Las Vegas under a name that consisted of or included CRAZY HORSE for a period of at least three years before Russell Road adopted and started using its CRAZY HORSE III mark.  In other words, the CRAZY HORSE III mark was available for adoption and use exclusively by Russell Road.

47.     By virtue of its continuous and exclusive use of the CRAZY HORSE III mark in commerce in connection with its gentlemen's club, Russell Road owns the exclusive common law rights to the CRAZY HORSE III mark for gentlemen's clubs in Las Vegas, the State of Nevada, and the United States.  Russell Road's common law trademark rights date back to at least as early as September 4, 2009 when it opened its CRAZY HORSE III gentlemen's club.

48.     In addition to its common law rights, Russell Road owns two trademark registrations issued by the State of Nevada for its CRAZY HORSE III mark in connection with the "operation of an adult entertainment facility," namely, Registration Nos. E0289392010-1 and E0289392010-8, which were filed and issued on June 15, 2010.  Pursuant to Nevada Revised

Statutes ("NRS") § 600.350, the registrations create a presumption that Russell Road is the rightful owner of the CRAZY HORSE III mark.

49.    Russell Road also owns a pending federal trademark application for its CRAZY HORSE III mark, namely, U.S. Trademark Application Serial No. 85/584,958 for "entertainment services, namely, live performances by dancers; night clubs."

50.    Russell Road's CRAZY HORSE III gentlemen's club is not an ordinary gentlemen's club. Russell Road has invested millions of dollars to create Las Vegas' premier gentlemen's club, offering a one-of-a-kind opulent and contemporary experience. Not only has Russell Road hired the most talented and attractive dancers, Russell Road has also made the club a must-see destination spot by booking a vareity of mainstream celebrities and adult entertainment stars. To name a few, the CRAZY HORSE III gentlemen's club has featured Heidi Montag, Carmen Electra, TV stars from VH1's Mob Wives and Bravo's Real Housewives of Atlanta, adult film star Jenna Jameson, and many Playboy Playmates. This has also led to substantial mainstream media coverage, including coverage in US Week magazine, the TV show Access Hollywood, and the TMZ's TV show and website. Not surprisingly, Russell Road's CRAZY HORSE III gentlemen's club won the prestigious "2012 Club of the Year/West" at the 15th Annual Adult Nightclub & Exotic Dancer Award Show.

51.    By virtue of Russell Road's substantial sales, continuous and exclusive use, advertising, and promotion, and media coverage, the CRAZY HORSE III mark has become identified exclusively with Russell Road and its gentlemen's club services and has come to symbolize extensive and substantial goodwill. As such, the CRAZY HORSE III mark and the goodwill associated therewith represents an extremely valuable asset to Russell Road.

**The former Crazy Horse Too club and the abandonment of The Crazy Horse Too mark**

52.    In the mid-1980s, The Power Company, Inc. opened a gentlemen's club called The Crazy Horse Too at 2466 Industrial Road in Las Vegas, Nevada. The Power Company, Inc. was a closely held corporation owned by Rick Rizzolo.

53.    The Crazy Horse Too Club gentlemen's club quickly became a magnet for scandal, resulting in a public perception that the club and its owners were corrupt and sordid.

1    Among other things, there was a very publicized incident in which a patron named Kirk Henry

2    was beaten severely with a baseball bat over a bill dispute, turning Mr. Henry into a paraplegic.

3    The club and its owners were also rumored to have ties to organized crime.  And as described

4    below, the Crazy Horse Too's owners were eventually criminally charged and convicted of

5    racketeering and tax evasion.

6           54.    Somewhat predictably, on May 26, 2006, the United States Government brought

7    criminal charges against The Power Company, Inc. and Rick Rizzolo for conspiracy to participate

8    in an enterprise through a pattern of racketeering in violation of 18 U.S.C. § 1962(d), conspiracy

9    to defraud the United States of taxes in violation of 18 U.S.C. § 371, and forfeiture pursuant to 18

10   U.S.C. § 1963.  *See United States of America v. The Power Company, Inc.*, Case No. 2:06-cr-

11   00186-PMP-PAL (D. Nev.).

12          55.    On or about June 1, 2006, The Power Company, Inc. and Rick Rizzolo entered

13   into a plea agreement with the United States Government.  As part of the plea agreement, The

14   Power Company, Inc. and Rick Rizzolo agreed to forfeit the property that had operated as The

15   Crazy Horse Too gentlemen's club.

16          56.    On September 6, 2006, the Las Vegas City Council voted to permanently revoke

17   The Power Company, Inc.'s liquor license for The Crazy Horse Too gentlemen's club.  As a

18   result of the plea agreement and the revocation of its liquor license, The Crazy Horse Too

19   gentlemen's club closed on or about September 7, 2006.

20          57.    On June 30, 2008, the adult use zoning for the 2466 Industrial Road expired,

21   making the property zoned for warehouse use only and preventing the use of the property as a

22   gentlemen's club.

23          58.    Because The Crazy Horse Too gentlemen's club closed its doors over six and a

24   half years ago and because its owners The Power Company, Inc. and Rick Rizzolo forfeited the

25   property to the United States Government, any and all trademark rights owned by The Power

26   Company, Inc. and Rick Rizzolo in the CRAZY HORSE TOO name and mark were abandoned

27   as a matter of law at least as early as September 7, 2006.

28

59.     Notably, since the club closed on September 7, 2006, the club has remained closed and has never reopened as of the date of this Complaint.

**Defendants acquired property rights pledged by RicRiz, LLC, pursuant to foreclosure sale of Deed of Trust and now infringing CRAZY HORSE TOO mark**

60.     In 2009, a group of investors (consisting of most of the named Defendants) purchased Loan Pool FDIC-SPB-2-09-115 from the Federal Deposit Insurance Corporation ("FDIC"), an independent agency of the federal government that, among other things, acquires loans from failed financial institutions and offers them for sale in loan pools.  One of the loans was secured by a Deed of Trust granted by RicRiz, LLC, dated October 25, 2006 and the real property located at 2446 Industrial Road, Las Vegas, Nevada—the real property of the former Crazy Horse Too gentlemen's club.  Neither The Power Company nor Rizzolo was a party to the subject Deed of Trust.

61.     The group of investors transferred the assets of the loan pool to Olympic Capital, a company they formed together.  Olympic Capital then assigned those same assets of the loan pool to Canico via an Assignment of Beneficial Interest, another company formed by those same investors and managed by Assil and Eshaghian.

62.     Canico proceeded to form Industrial Road, a Nevada limited liability company that is wholly owned and managed by Canico.  On July 1, 2011, Canico caused its Industrial Road to purchase the real property at 2446 Industrial Road at a trustee's sale for $3 million as evidenced by a certain Trustees Deed upon sale.

63.     However, the trustee's deed purchased by Industrial Road conveyed only the real property pledged by RicRiz, LLC and located at 2446 Industrial Road—the deed did not convey any trademark rights or goodwill to the CRAZY HORSE TOO mark (nor could it since all trademark rights had been abandoned since September 7, 2006).  The foreclosed upon Deed of Trust made no reference and contained no pledge from The Power Company or Rizzolo.

64.     After acquiring the real property of the former Crazy Horse Too club, Canico and Industrial Road began marketing the property for sale to prospective purchasers.  In doing so, they made false representations to prospective purchasers that they owned the CRAZY HORSE

1  TOO mark and that purchasers would be able to re-open the club under the CRAZY HORSE
2  TOO mark.

3          65.     As the owner and operator of the only Crazy Horse gentlemen's club in Las Vegas,
4  Russell Road soon learned of Canico's efforts to sell the former Crazy Horse Too property and
5  false representations regarding the rights to the abandoned Crazy Horse Too trademark.

6          66.     On October 3, 2012, Russell Road, through its counsel, sent a cease and desist
7  letter to Canico's legal counsel informing Canico of Russell Road's trademark rights in the
8  CRAZY HORSE III mark and position that any use of the CRAZY HORSE TOO mark by
9  Canico would constitute trademark infringement and demanding that Canico cease all use of the
10 CRAZY HORSE TOO mark.

11         67.     On October 11, 2012, Russell Road received a response letter from Defendants'
12 counsel Michael Mushkin dated October 8, 2012.  In their response, Defendants disputed Russell
13 Road's position and maintained that they had "every right to the [CRAZY HORSE TOO] name
14 and its use."

15         68.     In addition to the exchange of letters, Russell Road's counsel and Canico's counsel
16 had a telephone conference.  Canico's counsel stated that, in any event, Canico would be selling
17 the property to a buyer rather than opening a gentlemen's club itself.

18         69.     Because Canico represented that it would not itself be opening a gentlemen's club
19 under the CRAZY HORSE TOO name and because Canico had not yet made any use of the
20 infringing CRAZY HORSE TOO mark in commerce, Russell Road decided to wait and see if
21 Canico or some third party buyer would actually move forward and try to open the former club
22 under the abandoned and now infringing CRAZY HORSE TOO name.

23         70.     On or about March 5, 2013, Galam had phoned the front door hostess at Russell
24 Road's CRAZY HORSE III gentlemen's club, identified himself as the new owner of the former
25 Crazy Horse Too gentlemen's club, and warned her that he owned the rights to the Crazy Horse
26 Too mark and that Russell Road better stop using its CRAZY HORSE III mark immediately.  The
27 hostess provided Galam with the phone number for Russell Road's CFO, Bob Lenson.  When
28 Galam called Mr. Lenson, Mr. Lenson informed Galam to direct all future communications to

Russell Road's legal counsel.  This prompted a phone call between Russell Road's counsel and Canico's and Galam's counsel, as Russell Road was unclear as to the relationship between Mike Galam and Canico.

71.     Through this phone call, Russell Road learned that Galam had orchestrated a purchase of 59.993% of the membership interests in Canico from various members of Canico to Galam's closely held limited liability company Rhino and that Canico considered the transfers improper and invalid.  Apparently, Canico has filed a lawsuit in Nevada state court contesting Galam's/Rhino's alleged ownership interest in Canico.

72.     According to the papers filed in Canico's state case against Galam, Galam—through his control of Rhino—is attempting to push through a sale of the Industrial Road property from Industrial Road to Rhino 4824, a limited liability company recently formed on August 27, 2012 and controlled by Galam.  Simultaneously, Galam is also attempting orchestrate a lease of the Industrial Road property to Crazy Horse Too GC, yet another limited liability company recently formed on December 18, 2012 and controlled by Galam.

73.     Although Canico and Galam are entwined in a litigation over Galam's and Rhino's rights and interest in Canico, the litigation has not dissuaded Galam from moving forward with his plans to immediately open the Crazy Horse Too gentlemen's club.  Through his Crazy Horse Too GC, which he owns with his father Victor Galam and sister Jacqueline Galam Barnes, he has applied for business licenses in the Crazy Horse name to be able to open a topless club that serves liquor.

74.     Then, on or about April 17, 2013, Galam put up multiple high-profile billboards around the City of Las Vegas advertising the opening of the CRAZY HORSE TOO gentlemen's club on June 1, 2013.  The billboards also contained the words NOW HIRING in all caps.  *Id.*

75.     Almost immediately (i.e., within less than a week), consumers in the marketplace were confused, mistaking Russell Road for Defendants and vice versa or mistakenly assuming a sponsorship, affiliation, or relationship between Russell Road and Defendants.  Russell Road began receiving phone calls intended for Defendants and job applicants and applications from people seeking employment with Defendants after seeing Defendants' "Now Hiring" billboards

and Craigslist ads.  Russell Road received a multitude of phone calls inquiring whether it was opening up a second location.  Cab drivers, limousine companies, dancers, bartenders, vendors and customers have inquired about the relationship and are thoroughly confused.

76.     Notwithstanding Defendants' knowledge of Russell Road's prior rights in the CRAZY HORSE III trademark, Defendants have and are promoting their competing gentlemen's club under the confusingly similar CRAZY HORSE TOO designation in Nevada and throughout the United States with the deliberate and calculated intent to trade on the goodwill and reputation symbolized by Russell Road's CRAZY HORSE III mark to confuse and mislead the public.

**FIRST CLAIM FOR RELIEF**
**TRADEMARK INFRINGEMENT**
**UNDER § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))**

77.     Paragraphs 1–76, above, are realleged and incorporated by reference as if set forth in full.

78.     Russell Road owns common law trademark rights in the CRAZY HORSE III trademark in connection with its gentlemen's club in Las Vegas, Nevada.

79.     Russell Road also owns Nevada statutory trademark rights as the owner of Nevada Service Mark Registration Nos. E0289402010-1 and E0289392010-8 for the CRAZY HORSE III mark in connection with the operation of an adult entertainment facility.  The registrations were issued on June 15, 2010.

80.     Russell Road's trademark rights in the CRAZY HORSE III trademark predate any trademark use by Defendants of the infringing CRAZY HORSE TOO trademark.   More specifically, Russell Road's first use of the CRAZY HORSE III trademark occurred at least as early as September 4, 2009.  In contrast, Defendants' first use of the infringing CRAZY HORSE TOO mark occurred sometime in the last two to three weeks when Defendants began to use the infringing CRAZY HORSE TOO mark in commerce to promote their competing gentlemen's club that is scheduled to open on June 1, 2013.

81.     Defendants' adoption and use of the infringing CRAZY HORSE TOO designation to promote their competing gentlemen's club is likely to cause confusion, mistake, and/or deceive

consumers as to affiliation, connection, or association in violation of 15 U.S.C. § 1125(a).  In fact, Defendants' use of the infringing CRAZY HORSE TOO mark has already caused substantial actual confusion in the marketplace.  Accordingly, Defendants' use of the CRAZY HORSE TOO trademark constitutes federal trademark infringement.

82.     Defendants' aforesaid acts have caused and will continue to cause Russell Road to suffer damages and irreparable injury, and unless such acts are restrained by this Court through a temporary restraining order, preliminary injunction, and eventually a permanent injunction, such acts will be continued and Russell Road will continue to suffer damages and irreparable injury.

## SECOND CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT
## UNDER § 600.420 OF NEVADA'S REVISED STATUTES (NRS)

83.     Paragraphs 1–82, above, are realleged and incorporated by reference as if set forth in full.

84.     Russell Road owns common law trademark rights in the CRAZY HORSE III trademark in connection with its gentlemen's club in Las Vegas, Nevada.

85.     Russell Road also owns Nevada statutory trademark rights as the owner of Nevada Service Mark Registration Nos. E0289402010-1 and E0289392010-8 for the CRAZY HORSE III mark in connection with the operation of an adult entertainment facility.  The registrations were issued on June 15, 2010.

86.     Russell Road's trademark rights in the CRAZY HORSE III trademark predate any trademark use by Defendants of the infringing CRAZY HORSE TOO trademark.   More specifically, Russell Road's first use of the CRAZY HORSE III trademark occurred at least as early as September 4, 2009.  In contrast, Defendants' first use of the infringing CRAZY HORSE TOO mark occurred sometime in the last two to three weeks when Defendants began to use the infringing CRAZY HORSE TOO mark in commerce to promote their competing gentlemen's club that is scheduled to open on June 1, 2013.

87.     Defendants' adoption and use of the infringing CRAZY HORSE TOO designation to promote their competing gentlemen's club is likely to cause confusion, mistake, and/or deceive

consumers as to affiliation, connection, or association in violation of § 600.420 of the Nevada Revised Statutes (NRS).  In fact, Defendants' use of the infringing CRAZY HORSE TOO mark has already caused substantial actual confusion in the marketplace.  Accordingly, Defendants' use of the CRAZY HORSE TOO trademark constitutes trademark infringement under the laws of the State of Nevada.

88.     Defendants' aforesaid acts have caused and will continue to cause Russell Road to suffer damages and irreparable injury, and unless such acts are restrained by this Court through a temporary restraining order, preliminary injunction, and eventually a permanent injunction, such acts will be continued and Russell Road will continue to suffer damages and irreparable injury.

**THIRD CLAIM FOR RELIEF**
**TRADEMARK DILUTION**
**UNDER § 600.435 OF NEVADA'S REVISED STATUTES (NRS)**

89.     Paragraphs 1–37, above, are realleged and incorporated by reference as if set forth in full.

90.     Russell Road owns common law trademark rights in the CRAZY HORSE III trademark in connection with its gentlemen's club in Las Vegas, Nevada.

91.     Russell Road also owns Nevada statutory trademark rights as the owner of Nevada Service Mark Registration Nos. E0289402010-1 and E0289392010-8 for the CRAZY HORSE III mark in connection with the operation of an adult entertainment facility.  The registrations were issued on June 15, 2010.

92.     Russell Road's CRAZY HORSE III trademark is inherently distinctive because it is considered an arbitrary mark.  Arbitrary trademarks are entitled to the maximum protection available under trademark law.

93.     In addition to being an inherently distinctive arbitrary trademark, Russell Road's CRAZY HORSE III mark is famous within the State of Nevada (and possible within the United States and throughout the world).  As detailed elsewhere in this Complaint, Russell Road has invested millions of dollars into its CRAZY HORSE III mark and gentlemen's club and spends over a million dollars per year marketing it.  The CRAZY HORSE III gentlemen's club has

RUSSELL ROAD'S COMPLAINT

1   featured celebrities such as Paris Hilton, Heidi Montag, Carmen Electra, TV stars from VH1's

2   Mob Wives and Bravo's Real Housewives of Atlanta, adult film star Jenna Jameson, and many

3   Playboy Playmates.  This has also led to substantial mainstream media coverage, including the

4   filming of reality shows at the club, including an episode of Paris Hilton's widely watched reality

5   show, and coverage in US Weekly magazine, the TV show Access Hollywood, and the TMZ's

6   TV show and website.  Russell Road's CRAZY HORSE III gentlemen's club recently won the

7   prestigious "2012 Club of the Year/West" at the 15th Annual Adult Nightclub & Exotic Dancer

8   Award Show.

9       94.    Russell Road's CRAZY HORSE III mark became famous well before Defendants

10  began their recent use of the infringing CRAZY HORSE TOO mark approximately two to three

11  weeks ago to promote their competing gentlemen's club.

12      95.    As evidenced by the actual confusion that had already occurred, Defendants' use

13  of the infringing CRAZY HORSE TOO mark is diluting Russell Road's distinctive and famous

14  CRAZY HORSE III mark, lessening the capacity of the CRAZY HORSE III mark to identify and

15  distinguish Russell Road's gentlemen's club services.  In addition, Defendants' use of the

16  infringing CRAZY HORSE TOO mark is tarnishing Russell Road's distinctive and famouse

17  CRAZY HORSE III mark because the former Crazy Horse Too gentlemen's club is associated

18  with a wide variety of negative associations, including the beating of a defenseless man that

19  turned him into a parapalegic, ties to organized crime, and the criminal conviction of its owners

20  for rackateering and tax evasion.

21      96.    Defendants' aforesaid acts have caused and will continue to cause Russell Road to

22  suffer damages and irreparable injury, and unless such acts are restrained by this Court through a

23  temporary restraining order, preliminary injunction, and eventually a permanent injunction, such

24  acts will be continued and Russell Road will continue to suffer damages and irreparable injury.

25                          **FOURTH CLAIM FOR RELIEF**
                **CANCELLATION OF NEVADA TRADEMARK REGISTRATION**
26                  **UNDER § 600.390 OF NEVADA'S REVISED STATUTES (NRS)**

27      97.    Paragraphs 1–96, above, are realleged and incorporated by reference as if set forth

28  in full.

98.     On September 24, 2012, Defendant Industrial Road filed a trade name application for CRAZY HORSE TOO with the State of Nevada, which issued as E0512722012-3.   Even though Industrial Road could not have made use of the CRAZY HORSE TOO mark prior to July 1, 2011 at the earliest (the date when Industrial Road acquired rights pledged under the RicRiz, LLC Deed of Trust real property where the former Crazy Horse Too club is located), it fraudulently listed its first use anywhere and first use in the State of Nevada as October 1, 1984.

99.     In order to register a trade name with the State of Nevada, NRS § 600.340 requires that the applicant "has adopted and is using a mark" (the term "mark" as defined in the statute includes trade names).   NRS § 600.340(c) also requires the applicant to provide the date when the mark was first used anywhere and first used in the State of Nevada by the applicant.   Finally, NRS § 600.340(f) also requires the applicant to submit a statement that "the applicant is the owner of the mark and that no other person has the right to use the mark in this State either in the form set forth in the application or in such near resemblance to it as might deceive or cause mistake."

100.     Pursuant to NRS § 600.390, Russell Road seeks to cancel the Industrial Road's trade name registration on the following grounds:

a.     The registration was obtained fraudulently by a false assertion of use.   Industrial Road did not adopt and use the infringing CRAZY HORSE TOO as a trade name when it filed the application as required by NRS § 600.340.   As such, Industrial Road falsely represented that it was using the CRAZY HORSE TOO trade name with full knowledge of the falsity with the intent to deceive the Nevada Secretary of State to issue the registration.

b.     The registration was obtained fraudulently by a false assertion of first use dates. At the earliest, Industrial Road could not have used the CRAZY HORSE TOO mark before July 1, 2011 (and the first use by Defendants seems to have occurred only two to three weeks ago).   Yet, Industrial Road falsely listed the first use dates in the application as October 1, 1984.   As such, Industrial Road falsely represented that it was using the CRAZY HORSE TOO trade name since October 1, 1984 with full knowledge of the falsity with the intent to deceive the Nevada Secretary of State to issue the registration.

c. <u>Applicant is not the owner of the mark</u>.  As detailed in the preceding paragraphs and throughout this Complaint, Industrial Road is not the rightful owner of the CRAZY HORSE TOO mark because (i) Russell Road owns prior and superior rights in the CRAZY HORSE III mark, and Industrial Road's use and registration of CRAZY HORSE TOO infringes upon Russell Road's rights; (ii) Industrial Road had not yet made the requisite use of the CRAZY HORSE TOO mark in commerce when it filed the application; (iii) Russell Road did not acquire any rights in the CRAZY HORSE TOO mark from The Power Company, Inc., the prior owner of the club at 2466 Industrial Road, because it only acquired rights at a foreclosure of RicRiz, LLC's Deed of Trust, dated October 25, 2006, pledging real property rights; and (iv) The Power Company, Inc. had abandoned any and all rights in the CRAZY HOSE TOO mark.

d. <u>The mark was abandoned</u>.  To the extent Industrial Road is attempting to rely on any rights owned in the CRAZY HORSE TOO mark by The Power Company, Inc., the prior owner of the club located at 2466 Industrial Road, such rights were abandoned when the club closed on September 7, 2006 and by virtue of the fact that the CRAZY HORSE TOO mark has not been used since that time.  Moreover, Industrial Road did not have any direct dealings with the prior owner and has no privity of contract with either The Power Company Inc., or the U.S. Marshals service—it only acquired the real property where the former Crazy Horse Too club was located, per the Deed of Trust foreclosure, without any trademark rights or goodwill.

e. <u>Confusion with a prior registered mark</u>.  As detailed in the first two claims for relief in this Complaint, Russell Road owns prior rights in the CRAZY HORSE III mark, and Industrial Road's use and registration of CRAZY HORSE TOO infringes upon Russell Road's rights in the CRAZY HORSE III mark.

101.    Russell Road seeks an order from this Court instructing the Nevada Secretary of State to cancel Defendant Industrial Road's Nevada Trade Name Registration No. E0512722012 on one or more of the grounds enumerated in Paragraph 100 above.

///

///

**PRAYER FOR RELIEF**

WHEREFORE, Russell Road prays for judgment against Defendants and relief as follows:

(i)        that pursuant to 15 U.S.C. § 1116, NRS §§ 600.430 and 600.435, and its inherent equitable powers, the Court issue a temporary restraining order, preliminary injunction, and permanent injunction restraining and enjoining Defendants from using the CRAZY HORSE TOO name and mark in connection with a gentlemen's club in Las Vegas or the State of Nevada, as well as any names or marks confusingly similar to Russell Road's CRAZY HORSE III trademark, including any marks consisting of or containing the phrase CRAZY HORSE;

(ii)       that Defendants be ordered to remove and/or deliver up for destruction all advertisements, packaging, labels, and other articles bearing the CRAZY HORSE TOO name and mark, as well as any marks that infringe Russell Road's CRAZY HORSE III trademark, including any marks consisting of or containing the phrase CRAZY HORSE;

(iii)      that pursuant to 15 U.S.C. § 1117(a) and NRS § 600.430, Russell Road recover Defendants' profits and such sums in addition thereto as the Court shall find just;

(iv)       that pursuant to 15 U.S.C. § 1117(a), Russell Road recover the damages sustained in an amount to be proven at trial;

(v)        that pursuant to 15 U.S.C. § 1117(a) and NRS § 600.430, Russell Road recover the costs of this action, including reasonable attorneys' fees and interest;

(vi)       that pursuant to NRS § 600.430, Russell Road recover treble damages on all profits received by Defendants;

(vii)      that the Court order that Defendant Industrial Road's Nevada Trade Name Registration No. E0512722012-3 for CRAZY HORSE TOO be cancelled;

(viii)     that the Court declare that The Power Company, Inc.'s trademark rights in THE CRAZY HORSE TOO trademark were abandoned when The Crazy Horse Too gentlemen's club was closed without any intent to resume and that such abandonment occurred before the date when Defendants claim to have acquired any such trademark rights previously held by The Power Company, Inc;

RUSSELL ROAD'S COMPLAINT

1       (ix)    that the Court declare that Defendants did not acquire any trademark rights in THE

2  CRAZY HORSE TOO mark by virtue of their purchase at a court-ordered public auction of the

3  real property located where The Power Company, Inc. had owned and operated as The Crazy

4  Horse Too gentlemen's club;

5       (x)    that the Court declare that Defendants' use of the CRAZY HORSE TOO mark in

6  connection with a gentlemen's club in Las Vegas and the State of Nevada infringes Russell

7  Road's trademark rights in the CRAZY HORSE III mark;

8       (xi)    that the Court declare that Defendants' use of the CRAZY HORSE TOO mark in

9  connection with a gentlemen's club in Las Vegas and the State of Nevada dilutes Russell Road's

10  inherently distinctive and famous CRAZY HORSE III mark;

11       (xii)    that Russell Road be awarded its costs and attorneys' fees; and

12       (xiii)   such other and further relief that this Court may deem just and equitable.

13  Dated: April 30, 2013              Respectfully submitted,

14                          PUOY K. PREMSRIRUT, ESQ., INC.

15

16                          By

17                          Puoy K. Premsrirut, Esq.

18                          Nevada Bar #7141
                        520 S. Fourth St., Second Floor

19                          Las Vegas, NV  89101

20                          Bruno W. Tarabichi, Esq.
                        CA Bar No. 215129

21                          OWENS TARABICHI LLP
                        111 N. Market St., Suite 730

22                          San Jose, California 95113
                        Telephone:  408.298.8200

23                          Facsimile:  408.521.2203
                        Pro Hac Vice Application Pending

24

25                          Attorneys for Plaintiff
                        Russell Road Food and Beverage, LLC

26

27

28

1

## DEMAND FOR JURY TRIAL

2      Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial.

3

4      Dated: April 30, 2013                          Respectfully submitted,

5                                                      PUOY K. PREMSRIRUT, ESQ., INC.

6

7                                                      By _____

8                                                         Puoy K. Premsrirut, Esq.
                                                          Nevada Bar #7141
9                                                         520 S. Fourth St., Second Floor
                                                          Las Vegas, NV  89101

10                                                        Bruno W. Tarabichi, Esq.
                                                          CA Bar No. 215129
11                                                        OWENS TARABICHI LLP
                                                          111 N. Market St., Suite 730
12                                                        San Jose, California 95113
                                                          Telephone:  408.298.8200
13                                                        Facsimile:  408.521.2203
                                                          Pro Hac Vice Application Pending
14
                                                       Attorneys for Plaintiff
15                                                     Russell Road Food and Beverage, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **VERIFICATION**

2    I, Nando Sostilio, am the Managing Member of Plaintiff Russell Road Food and

3    Beverage, LLC ("Russell Road"). I am authorized to make this verification on Russell Road's

4    behalf. I have read the foregoing Plaintiff Russell Road Food and Beverage, LLC Verified

5    Complaint for Federal Trademark Infringement, State Trademark Infringement, State Trademark

6    Dilution, and Cancellation of State Trademark Registration. I hereby verify that the foregoing

7    Complaint is true and correct.

8    I declare under penalty of perjury under the laws of the State of Nevada that the foregoing

9    is true and correct.

10

11    Dated: April 30, 2013

Nando Sostilio on behalf of
12    Russell Road Food and Beverage, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

owens tarabichi llp
Counselors At Law

23                    RUSSELL ROAD'S COMPLAINT