MICHAEL R. MUSHKIN
Nevada Bar #2421
MICHAEL R. MUSHKIN & ASSOCIATES
4475 South Pecos Road
Las Vegas, NV 89121
Tel: (702) 386-3999
Fax:  (702) 454-3333
Email: michael@mushlaw.com

Attorneys for defendant
Industrial Road 2440-2497, LLC

THE ALTMAN LAW GROUP
BRYAN C. ALTMAN (CA SBN 122976)
Email:  bryan@altmanlawgroup.net
MICHAEL T. SMITH (CA SBN 170522)
Email: msmith@altmanlawgroup.net
6300 Wilshire Blvd. Suite 980
Los Angeles, California 90048
Telephone: (323) 653-5581
Fax: (323) 653-5542
Appearing *Pro Hac Vice*

Attorneys for defendants Mike Galam,
Victor Galam, Jacqueline Galam Barnes,
Rhino Bare Projects, LLC, Rhino Bare Projects
4824 LLC, Crazy Horse Too Gentlemen's Club LLC
and Canico Capital Group LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA, SOUTHERN DIVISION

| | |
|---|---|
| RUSSELL ROAD FOOD and BEVERAGE, LLC, a Nevada Limited Liability Company, <br><br>      Plaintiff, <br><br>    v. <br><br> MIKE GALAM, et al. <br><br>      Defendants, <br> _____ <br><br> MIKE GALAM, VICTOR GALAM, JACQUELINE GALAM BARNES, RHINO BARE PROJECTS, LLC, RHINO BARE PROJECTS 4824 LLC | **CASE NO.:  2:13-cv-00776 JCM (NJK)** <br><br> Assigned to the Hon. James C. Mahan <br><br> **ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANTS/ COUNTERCLAIMANTS MIKE GALAM, VICTOR GALAM, JACQUELINE GALAM BARNES, RHINO BARE PROJECTS, LLC, RHINO BARE PROJECTS 4824 LLC, CRAZY HORSE TOO GENTLEMEN'S CLUB, LLC, CANICO CAPITAL GROUP LLC AND INDUSTRIAL ROAD 2440-2497, LLC** |

AND CRAZY HORSE  TOO
GENTLEMEN'S CLUB LLC,
CANICO CAPITAL GROUP, LLC
AND INDUSTRIAL ROAD 2440-
2497, LLC

     Counterclaimants,

            v.

RUSSELL ROAD FOOD a
BEVERAGE, LLC, a Nevada Limited
Liability Company

     Counter-defendant

)  **DEMAND FOR JURY TRIAL**
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

_____

## <u>ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS</u>

     Defendants-Counterclaimants Mike Galam, Victor Galam, Jacqueline Galam

Barnes, Rhino Bare Projects, LLC, Rhino Bare Projects 4824 LLC, Crazy Horse

Too Gentlemen's Club, LLC, Canico Capital Group, LLC and Industrial Road

2440-2497, LLC (collectively "Defendants" or "CHT") hereby answer the

Complaint of Plaintiff Russell Road Food and Beverage, LLC ("Russell Road")

assert affirmative defense and counterclaims as follows:

1 .    Deny knowledge or information sufficient to form a belief as to the truth of

each and every allegation contained in paragraph 1 of the Complaint.

2.      Admit the allegations contained in paragraph 2 only the extent that Mike Galam is a manager of Rhino Bare which owns 59.933% membership interest of Canico.

3.      Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 3 of the Complaint.

4.      Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 4 of the Complaint.

5.      Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 5 of the Complaint.

6.      Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 6 of the Complaint.

7.      Deny the allegations contained in paragraph 7 of the Complaint.

8.      Deny the allegations contained in paragraph 8 of the Complaint.

9.      Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 9 of the Complaint.

10.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 10 of the Complaint.

11.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 11 of the Complaint.

12.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 12 of the Complaint.

13.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 13 of the Complaint.

14.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 14 of the Complaint.

15.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 15 of the Complaint.

16.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 16 of the Complaint.

17.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 17 of the Complaint.

18.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 18 of the Complaint.

19.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 19 of the Complaint.

20.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 20 of the Complaint.

21.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 21 of the Complaint.

22.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 22 of the Complaint.

23.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 23 of the Complaint.

24.     Admit the allegations contained in paragraph 24 of the Complaint.

25.     Deny the allegations in paragraph 25 of the Complaint.

26.     Admit the allegations contained in paragraph 26 of the Complaint, but deny knowledge or information sufficient to form a belief as to the truth of the allegation that Crazy Horse Too GC's principal place of business is unknown to Plaintiff.

27.     Deny each and every allegation contained in paragraph 27 of the Complaint.

28.     Deny each and every allegation contained in paragraph 28 of the Complaint.

29.     Deny each and every allegation contained in paragraph 29 of the Complaint.

30.     Deny each and every allegation contained in paragraph 30 of the Complaint.

31.     Deny each and every allegation contained in paragraph 31 of the Complaint.

32.     Deny each and every allegation contained in paragraph 32 of the Complaint.

33.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 33 of the Complaint.

34.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 34 of the Complaint.

35.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 35 of the Complaint.

36.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 36 of the Complaint.

37.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 37 of the Complaint.

38.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 38 of the Complaint.

39.     Deny each and every allegation contained in paragraph 39 of the Complaint.

40.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 40 of the Complaint.

41.     Admit that this Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331, 1338 and U.S.C. § 1121, deny knowledge or information sufficient to form a belief that this Court has subject matter jurisdiction of this action under 28 U.S.C. 1332 and deny that this Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 2201 and 2202 and that this action involves substantial claims.

42.     Admit the allegations contained in paragraph 42 of the Complaint.

43.     Admit the allegations contained in paragraph 43 of the Complaint.

44.     Admit that Russell Road opened a gentlemen's club under the Crazy Horse III name in the Playground complex, at 3525 West Russell Road, and deny knowledge or information sufficient to form a belief as to the truth of each and every other allegation contained in paragraph 44 of the Complaint.

45.      Admit that Russell Road improperly uses the CRAZY HORSE III name and mark with the words CRAZY HORSE III Gentlemen's Club, and deny that Russell Road has any rights in its CRAZY HORSE III Gentlemen's Club word and design mark.

46.     Deny each and every allegation contained in paragraph 46 of the Complaint.

47.     Deny each and every allegation contained in paragraph 47 of the Complaint.

48.     Admit that Russell Road filed on June 15, 2010 for a Nevada trade name and Service mark registration, but deny each and every other allegation contained in paragraph 48 of the Complaint.

49.     Admit that Russell Road filed U.S. Trademark Application Serial Nos. 85/584958 for "entertainment services, namely, live performances by dancers; night clubs," and also filed U.S. Trademark Application Serial Nos. 85079193, 85079211 and 85079258, all of which were rejected by the United States Patent and Trademark Office ("USPTO") due to likelihood of confusion with the CRAZY HORSE TOO® mark, and deny each and every other allegation contained in paragraph 49 of the Complaint.

50.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 50 of the Complaint.

51.     Deny each and every allegation contained in paragraph 51 of the Complaint.

52.     Admit the allegations contained in paragraph 52 of the Complaint.

53.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 53 of the Complaint.

54.     Admit the allegations contained in paragraph 54 of the Complaint.

55.     Admit the allegations contained in paragraph 55 of the Complaint.

56.     Admit that The Crazy Horse Too gentlemen's club's liquor license was previously revoked, but subsequently reinstated because of Counterclaimants' intention to resume use of the CRAZY HORSE TOO trademarks.  Deny that The Crazy Horse Too gentlemen's club closed on or about September 7, 2006.

57.     Deny each and every allegation contained in paragraph 57 of the Complaint.

58.     Deny each and every allegation contained in paragraph 58 of the Complaint.

59.     Deny each and every allegation contained in paragraph 59 of the Complaint.

60.     Admit the allegations contained in paragraph 60 of the Complaint.

61.     Admit the allegations contained in paragraph 61 of the Complaint.

62.     Admit the allegations contained in paragraph 62 of the Complaint, except to the extent that they imply that Industrial Road purchased only the real property at 2446 Industrial Road for $3 million.

63.     Deny each and every allegation contained in paragraph 63 of the Complaint.

64.     Deny each and every allegation contained in paragraph 64 of the Complaint.

65.     Deny knowledge or information sufficient to form a belief as to the truth of the  allegations contained in paragraph 65 of the Complaint regarding Plaintiff, but deny the allegation that the representations were "false."

66.     Deny each and every allegation contained in paragraph 66 of the Complaint.

67.     Admit the allegations contained in paragraph 67 of the Complaint.

68.     Deny each and every allegation contained in paragraph 68 of the Complaint.

69.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 69 of the Complaint.

70.     Deny each and every allegation contained in paragraph 70 of the Complaint.

71.     Deny knowledge or information sufficient to form a belief as to what Russell Road "learned" but deny the truth of the remaining allegations contained in paragraph 71 of the Complaint.

72.     Defendants deny the allegations contained in paragraph 72 of the Complaint.

73.     Deny each and every allegation contained in paragraph 73 of the Complaint.

74.     Deny each and every allegation contained in paragraph 74 of the Complaint.

75.     Deny each and every allegation contained in paragraph 75 of the Complaint.

76.     Deny each and every allegation contained in paragraph 76 of the Complaint.

**FIRST CLAIM FOR RELIEF**

**TRADEMARK INFRINGEMENT**

**UNDER § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))**

77.  Defendants-Counterclaimants incorporate their answers to paragraphs 1-76 as though fully set forth herein.

78.  Deny each and every allegation contained in paragraph 78 of the Complaint.

79.  Deny each and every allegation contained in paragraph 79 of the Complaint.

80.  Deny each and every allegation contained in paragraph 80 of the Complaint.

81.  Deny each and every allegation contained in paragraph 81 of the Complaint.

82.  Deny each and every allegation contained in paragraph 82 of the Complaint.

**SECOND CLAIM FOR RELIEF**

**TRADEMARK INFRINGEMENT**

**UNDER § 600.420 OF NEVADA'S REVISED STATUTES (NRS)**

83.  Defendants-Counterclaimants incorporate their answers to paragraphs 1- 82 as though fully set forth herein.

84.  Deny each and every allegation contained in paragraph 84 of the Complaint.

85.  Deny each and every allegation contained in paragraph 85 of the Complaint.

86.   Deny each and every allegation contained in paragraph 86 of the Complaint.

87.   Deny each and every allegation contained in paragraph 87 of the Complaint.

88.   Deny each and every allegation contained in paragraph 88 of the Complaint.

## THIRD CLAIM FOR RELIEF
## TRADEMARK DILUTION
## UNDER § 600.435 OF NEVADA'S REVISED STATUTES (NRS)

89.   Defendant-Counterclaimants incorporate their answers to paragraphs 1-88 as though fully set forth herein.

90.   Deny each and every allegation contained in paragraph 90 of the Complaint.

91.   Deny each and every allegation contained in paragraph 91 of the Complaint.

92.   Deny each and every allegation contained in paragraph 92 of the Complaint.

93.   Deny each and every allegation contained in paragraph 93 of the Complaint.

94.   Deny each and every allegation contained in paragraph 94 of the Complaint.

95.   Deny each and every allegation contained in paragraph 95 of the Complaint.

96.   Deny each and every allegation contained in paragraph 96 of the Complaint.

## FOURTH CLAIM FOR RELIEF

## CANCELLATION OF NEVADA TRADEMARK REGISTRATION
## UNDER § 600.390 OF NEVADA'S REVISED STATUTES (NRS)

97.    Defendants-Counterclaimants incorporate their answers to paragraphs 1- 97 as though fully set forth herein.

98.    Deny each and every allegation contained in paragraph 98 of the Complaint.

99.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 99 of the Complaint.

100.   Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 100 of the Complaint.

101.   Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 101 of the Complaint.

## PRAYER FOR RELIEF

102.   Deny that Russell Road is entitled to any damages or relief whatsoever.

## <u>AFFIRMATIVE DEFENSES</u>

## FIRST AFFIRMATIVE DEFENSE
## (Infringement Existing Mark)

103.   Russell Road's use of the CRAZY HORSE  III mark in connection with the same services as the CRAZY HORSE TOO® mark constitutes an infringement by Russell Road of the trademark rights in the marks of Counterclaimants; thus, Russell Road is not entitled to any declaration that the Crazy Horse III does not infringe on Counterclaimants CRAZY HORSE TOO® mark.

## SECOND AFFIRMATIVE DEFENSE
### (Estoppel)

104.   Russell Road's claims are barred, in whole or in part, by the doctrine of estoppel.

## THIRD AFFIRMATIVE DEFENSE
### (Unclean Hands)

105.   Russell Road's claims are barred, in whole or in part, by the doctrine of unclean hands.

## FOURTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

106.   Russell Road's claims are barred, in whole or in part, by the applicable statutes of limitations.

## FIFTH AFFIRMATIVE DEFENSE
### (Failure to Join an Indispensible Party)

107.    Russell Road's claims are barred, in whole or in part, by its failure to join necessary and indispensible parties.

## SIXTH AFFIRMATIVE DEFENSE
### (No Attorneys' Fees and Costs)

108.   As a Sixth and Separate Affirmative Defense, Defendants allege that Plaintiff Russell Road has failed to state or establish facts sufficient to entitle it to a recovery of attorneys' fees and costs pursuant to any statute, rule, or regulation under Nevada law.

## SEVENTH AFFIRMATIVE DEFENSE
### (No Punitive or Exemplary Damages)

109.   As a Seventh and Separate Affirmative Defense, Defendants allege that Plaintiff Russell Road has failed to state or establish facts sufficient to entitle it to a recovery of punitive or exemplary damages because at all times alleged in the Complaint, Defendants were the lawful owners of the CRAZY HORSE TOO trademarks with first use in interstate commerce and the first to obtain secondary meaning.

## EIGHTH AFFIRMATIVE DEFENSE
### (No Right to Injunctive Relief)

110.   As an Eighth and Separate Affirmative Defense, Defendants allege that Plaintiff has failed to state or establish facts sufficient to entitle it to injunctive relief, including without limitation, that plaintiff has no adequate remedy at law, that plaintiff has suffered irreparable harm, and that there is a reasonable probability that plaintiff will succeed on the merits.

## NINTH AFFIRMATIVE DEFENSE
### (Plaintiff Lacks First Use in Interstate Commerce)

111.   As a Ninth and Separate Affirmative Defense, Defendants allege that Plaintiff Russell Road does not have first use in commerce of its subject trademark(s) and at all relevant times alleged in the Complaint, Defendants had first use of the ACRAZY HORSE TOO trademarks and were the first to obtain secondary meaning of their trademarks in interstate commerce.

## TENTH AFFIRMATIVE DEFENSE
### (Plaintiff's Trademarks Lack Secondary Meaning)

112.   As a Tenth and Separate Affirmative Defense, Defendants allege that Plaintiff Russell Road has not achieved secondary meaning of its trademarks(s) because at all relevant times alleged in the Complaint, Plaintiff Russell Road failed to sufficiently advertise, promote, and market its trademark(s) within Nevada and nationally such that its trademark(s) failed to achieve secondary meaning as a source of origin in the minds of  consumers.

## ELEVENTH AFFIRMATIVE DEFENSE
### (No Likelihood of Confusion)

113.   As an Eleventh and Separate Affirmative Defense, Defendants allege that there is no likelihood of confusion between Plaintiff Russell Road's trademark(s) and Defendants CRAZY HORSE TOO trademarks because there is a crowded field of similar marks permitted registration by the Nevada Secretary of State and consumers have learned to distinguish small differences between competing trademarks.

## TWELFTH AFFIRMATIVE DEFENSE
### (No Damages to Plaintiff)

114.    As a Twelfth and Separate Affirmative Defense, Defendants allege that Plaintiff Russell Road at all times alleged in the Complaint is not entitled to recovery of damages under any theory of relief because Plaintiff has not suffered a loss of sales, income, or any other damages from the lawful acts of Defendants through the use of their state registered CRAZY HORSE TOO trade name.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (No Abandonment by Defendants)

115.    As a Thirteenth and Separate Affirmative Defense, Defendants allege that there was not an abandonment of the CRAZY HORSE TOO trademarks based on the evidence that Defendants purchased the assets of the CRAZY HORSE TOO, including the trademarks, trade names, service marks, and good will of the business for a substantial monetary investment and always intended to resume use of the CRAZY HORSE TOO trademarks before they became abandoned.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (First Use in Commerce by Defendants)

116.    As a Fourteenth and Separate Affirmative Defense, Defendants allege that through their purchase of the assets of the CRAZY HORSE TOO they obtained an assignment of all rights to use the CRAZY HORSE TOO trademarks including the rights of first use based on use going back to 1984 by the prior owners of the trademarks.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (Assignment by Operation of Law)

117.    As a Fifteenth and Separate Affirmative Defense, Defendants allege that through their purchase of the assets of the CRAZY HORSE TOO they obtained an

assignment of all rights to use the CRAZY HORSE TOO trademarks by operation of law, through the purchase of the good will of the CRAZY HORSE TOO business and through the forfeiture of all assets and a sale for all purposes to Canico through the Federal Government Asset Sale.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Prior Common law Rights)

118.   As a Sixteenth and Separate Affirmative Defense, Defendants allege that through their purchase of the assets of the CRAZY HORSE TOO they obtained prior common law rights through use of the subject trademarks in interstate commerce and Defendants are the Senior User of the CRAZY HORSE TOO trademarks with superior rights to use the marks in commerce based on earlier use through prior owners.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (Good Faith)

119.   As a Seventeenth and Separate Affirmative Defense, Defendants allege that at all times alleged in the Complaint, Defendants CHT acted in good faith towards Plaintiff and the actions taken by Defendants were in good faith for legitimate business reasons.

## COUNTERCLAIMS
### The Parties

1.   Defendant-Counterclaimant Mike Galam ("Galam") is an individual and manager of Canico Capital Group, LLC and owner of Rhino Bare Projects LLC.

2.      Defendant-Counterclaimant Victor Galam ("Victor Galam") is an individual and the father of Mike Galam.  Victor Galam is a member of Crazy Horse Too GC with an 85% ownership interest.

3.      Defendant Jacqueline Galam Barnes ("Barnes") is an individual who is the sister of Mike Galam.  Barnes is a member of Crazy Horse Too GC with a 5% ownership interest.

4.      Rhino Bare Projects LLC is a California limited liability company having its principal place of business in Glendale, California.

5.      Rhino Bare Projects 4824 LLC is a California limited liability company having its principal place of business in Glendale, California.

6.      Crazy Horse Too Gentlemen's Club LLC is a Nevada limited liability company doing business in Las Vegas, Nevada.

7.      Canico Capital Group LLC is a California limited liability company having its principal place of business in Los Angeles, California.

8.      Industrial Road 2440-2497 LLC is a Nevada limited liability company doing business in Las Vegas, Nevada.

9.      On information and belief Russell Road is a Nevada limited liability company having its principal place of business at 3550 West Quail Avenue, Las Vegas, Nevada 89118.

**Jurisdiction**

10.     These are counterclaims for trademark infringement, false designation of origin and unfair competition in violation of the laws of the United States and the State of Nevada.

11.     Jurisdiction of this Court over these counterclaims is based upon 28 U.S.C. §§ 1331 and 1338(a), 15 U.S.C. § 1121 (a) and upon Rule 13 of the Federal Rules of Civil Procedure. Jurisdiction over the claims brought under the statutory and common law of the State of Nevada is conferred pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

**Development of the CRAZY HORSE TOO® Brand**

12.     The CRAZY HORSE mark has a long history in Las Vegas, Nevada. During the late 1970s/early 1980s, the original Crazy Horse Saloon club opened on Paradise Road in Las Vegas, and eventually closed in the late 1980s.

13.     In 1984, after the closure of the original Crazy Horse Saloon, Rick Rizzolo opened the CRAZY HORSE TOO gentlemen's club at 2466 Industrial Road in Las Vegas, Nevada.  The front of the CRAZY HORSE TOO club displayed columns and architecture borrowed from a Greek Temple and the CRAZY HORSE TOO trade name and trademark were displayed in large stylized Greek letters.

14.     From 1984 through 2006, the CRAZY HORSE TOO catered to Hollywood celebrities old and new looking to enhance their fame with the notoriety associated with the CRAZY HORSE TOO.  James Caan, Brad Pitt, Tom Selleck, Mike

Tyson, Dennis Rodman, George Clooney, Robert De Niro, and Joe Pesci were known to frequent the CRAZY HORSE TOO during this time period.  Their visits made it into the local and national media, increasing the fame of the CRAZY HORSE TOO nationally and world-wide.

15.     Rizzolo built his Las Vegas club up from a 1,200-square-foot, 12-dancer business to a 26,000-square-foot operation with 1,500 dancers.  In a deposition that Rizzolo gave in the Henry case in July 2005, he said the club grossed $800,000 to $1 million a month, which translates to annual gross sales of $9.6 million to $12 million. He estimated that the club attracted 600,000 to 700,000 customers annually.  During this time period, business was good enough for Rizzolo to open another CRAZY HORSE TOO club in Philadelphia, Pennsylvania which further increased the CRAZY HORSE TOO fame nationally and world-wide.

16.     During its years of operation, The CRAZY HORSE TOO name achieved fame, notoriety and iconic status through its gentlemen's club business throughout Nevada and nationally in the media and through owner Rick Rizzolo's efforts to expand the club and battle the authorities.

17.     In 2001, the CRAZY HORSE TOO trademark was prominently featured in the movie Ocean's Eleven in a scene with Brad Pitt in which he walks to the front of the club before the big heist and the CRAZY HORSE TOO trademark and iconic, world famous Greek Temple front of the club are displayed in the movie. This movie further increased the world-wide fame of the CRAZY HORSE TOO.

18.     From 2002 through 2006, the CRAZY HORSE TOO owned and displayed the website www.crazyhorsetoo.com which displayed the front Greek Temple of

the Las Vegas and Philadelphia clubs and the large stylized Greek lettering of the CRAZY HORSE TOO trade name and trademark.  Through this website, the CRAZY HORSE TOO trademark was displayed and available to internet visitors nationally and worldwide.  Samples of web pages dating back to December 2002 displaying the CRAZY HORSE TOO trademark on its website are still visible on the internet today.

19.     The CRAZY HORSE TOO also had a website for its sister Philadelphia Gentlemen's Club located at CrazyHorseTooPhilly.com.  The CRAZY HORSE TOO even had a MySpace page to promote its Gentlemen's Club.  The CRAZY HORSE TOO website remained on the internet through 2009 displaying the CRAZY HORSE TOO trade name and trademark.

20.     Although it lost its liquor license in June 2006, the CRAZY HORSE TOO remained open, operating without a liquor license, until July 2007 when it was seized by the Federal Government for violation of a plea bargain agreement in *U.S. v. Power Company, Inc., et al.*, Case No. 2:06-CR-0186-PMP (PAL) (D. Nev.), and the assets were handed over to a U.S. Trustee.

21.     On August 21, 2007, the District of Nevada ordered the U.S. Trustee to sell the assets, including the real property and intellectual property of the CRAZY HORSE TOO.

22.     From 2007 through 2010, the Federal Government asset sale was stayed preventing any sale or use of the CRAZY HORSE TOO assets.  The CRAZY HORSE TOO trademark, trade name, and service mark were never abandoned.

23.     During the time that the CRAZY HORSE TOO was under seizure by the Federal Government, it was closed for business but the club remained intact including the stylized Greek lettering CRAZY HORSE TOO mark on its Greek Temple façade.

24.     A local Las Vegas Historical Society considers the CRAZY HORSE TOO sign to be an historical landmark.

## Counterclaimants' Acquisition of the Intellectual Property Rights to the CRAZY HORSE TOO Trademark

25.     In 2010, Canico Capital Group petitioned the District Court of Nevada to remove the stay on the U.S. Trustee's sale of the CRAZY HORSE TOO assets.  Its petition was granted and it was given a priority position to purchase the assets of the CRAZY HORSE TOO by Order dated December 22, 2010.

26.     Canico subsequently purchased these assets which included the "trade names, trademarks, and other tangible and intangible personal property located at or used on the Real Property in connection with the operation or maintenance of the Crazy Horse Too…"  Canico purchased the entire interest in the CRAZY HORSE TOO trade name and trademarks including all of the prior goodwill and fame, rights of first use and exclusive use to the CRAZY HORSE TOO trademark through this Trustee asset sale and purchase.  Canico currently is the managing member of Industrial Road 2440-2497, LLC which is the registered owner of the CRAZY HORSE TOO™ trade name in Nevada with a First Use date of October 1, 1984.

27.     On February 28, 2013, Rhino Bare Projects, LLC, a California limited liability company, purchased a majority 59.933% interest in Canico with the intention of reopening the CRAZY HORSE TOO Gentlemen's Club business located on 2440-2494 Industrial Road, Las Vegas, Nevada.

## Russell Road's Infringing Use of CRAZY HORSE III

28.     Russell Road initially opened a gentlemen's club in 2007 as "The Penthouse Club" pursuant to a licensing agreement with General Media Communications, Inc. ("GMCI"), a New York Corporation that licenses intellectual property associated with the Penthouse Magazine brand ("Penthouse Marks").  The club was located in the Playground complex, a 40,000 square foot complex in Las Vegas that features 24-hour attractions, including nightclubs, dining establishments, live music, and live sports viewing.

29.     In May of 2009, GMCI filed suit against Russell Road alleging that Russell Road had breached its obligation to pay licensing fees, and sought to enjoin Russell Road from any further use of the Penthouse Marks. *General Media Communications, Inc. v. Russell Road Food and Beverage,* LLC et al., No. 2:09-cv-0980 (D. Nev.).

30.     On or about September 4, 2009, slightly more than two years after the seizure of the CRAZY HORSE TOO by the Federal Government, Russell Road intentionally changed the name of its gentlemen's club to the CRAZY HORSE III, in order to trade on the fame and notoriety of the much more famous CRAZY HORSE TOO.

31.     Since operating as CRAZY HORSE III, Russell Road has held itself out to the public as affiliated with CRAZY HORSE TOO.  As recently as October 10, 2012 Russell Road tweeted "Third time's a charm!"

32.     On or about July 7, 2010, Russell Road filed three separate applications with the USPTO for variants of the CRAZY HORSE III mark:

•  US Serial Number 85079193, for the CRAZY HORSE TOO design mark:

•  US Serial Number 85079211, for the following Crazy Horse Gentlemen's Club III At The Playground design mark: and

•  US Serial Number 85079258, for the following Crazy Horse Gentlemen's Club III At The Playground design mark:

33.     Although used with a design, the words "CRAZY HORSE" predominate each of the three applications.

34.     The USPTO rejected each of these attempted registrations based on likelihood of confusion with existing CRAZY HORSE marks.

35.     On March 30, 2012, Russell Road *again* filed for the Crazy Horse Gentlemen's Club III mark:

•  US Serial Number 85584958:

36.     The USPTO also rejected this application based on likelihood of confusion with existing CRAZY HORSE marks.

37.     Despite the USPTO's repeated rejections, Russell Road continues to call its club CRAZY HORSE III and use the confusingly similar mark in advertising and promotion for its gentlemen's club.

38.     Soon after acquiring the rights to the CRAZY HORSE TOO name, Cross-complainants contacted Russell Road to inform it of its infringement on the CRAZY HORSE TOO name.

# FIRST COUNTERCLAIM
## TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT - 15 U.S.C. § 1114(1)(A)

39.     Counterclaimants reallege and incorporate each and every allegation contained in paragraphs 1 through 38 above with the same force and effect as if said allegations were fully set forth herein.

40.     Galam and CHT have obtained lawful rights to use their CRAZY HORSE TOO name and mark in interstate commerce in connection with virtually all of their products and services with a first use date in interstate commerce of 1984 through the purchase of all of the assets, good will, and intellectual property of the CRAZY HORSE TOO™.   Canico is the managing member of Industrial Road 2440-2497, LLC which is the registered owner of the CRAZY HORSE TOO™ trade name in Nevada with a First Use date of October 1, 1984 in interstate commerce.

41.    Russell Road had both actual and constructive knowledge of the ownership of and rights the CRAZY HORSE TOO™ trademarks owned by Counterclaimants prior to Russell Road's infringing use of those marks.

42.    Russell Road's use in commerce of the CRAZY HORSE III marks and/or marks confusingly similar to the CRAZY HORSE TOO marks for its services constitutes a reproduction, copying, counterfeiting, and colorable imitation of Counterclaimants' trademarks in a manner that is likely to cause confusion or mistake or is likely to deceive consumers.

43.    Russell Road adopted and continued to use in commerce the federally registered and incontestable CRAZY HORSE TOO marks of counterclaimants, and marks confusingly similar thereto, with full knowledge of Counterclaimants' superior rights, and with full knowledge that its infringing use of the CRAZY HORSE TOO marks was intended to cause confusion, mistake and/or deception.

44.    Russell Road offers its identical goods and services under the infringing marks in the same channels of trade and in the same class of customers (indeed, the same customers) as those in which Counterclaimants' legitimate goods and services are offered.

40.    The infringing use of Counterclaimants' name and marks by Russell Road in connection with its adult clubs is likely to cause, and has caused, confusion, mistake or deception as to the affiliation, connection or association of the adult club services with Galam and CHT, in violation of 15 U.S.C. § 1114.

45.     The actions of Russell Road constitute knowing, deliberate, and willful infringement of the federally registered marks of Counterclaimants. The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

46.     As a result of the infringement of Russell Road and the lack of control over the use of Counterclaimants marks, Counterclaimants have suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Counterclaimants in their federally registered CRAZY HORSE TOO@ marks. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Galam and CHT have no adequate remedy at law.

47.     Galam and CHT will continue to suffer irreparable harm unless this Court enjoins Russell Road's conduct.

## SECOND COUNTERCLAIM
## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## UNDER THE LANHAM ACT-15 U.S.C. § 1125(A)

48.     Counterclaimants reallege and incorporate each and every allegation contained in paragraphs 1 through 47 above with the same force and effect as if said allegations were fully set forth herein.

49.     Russell Road has deliberately and willfully attempted to trade on the longstanding and hard-earned goodwill in the CRAZY HORSE TOO™ name and marks and the reputation established by Counterclaimants in connection with their products and services, as well as in order to confuse consumers as to the origin and sponsorship of adult entertainment services offered by Russell Road and to pass off its products and services in commerce as those of Galam and CHT.

50.     The unauthorized and tortious conduct of Russell Road has also deprived and will continue to deprive Counterclaimants of the ability to control the consumer perception of its products and services offered under Counterclaimants' marks, wrongfully placing the valuable reputation and goodwill of Galam and CHT in the hands of Russell Road.

51.     The conduct of Russell Road is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Russell Road and its Crazy Horse III club with Galam and CHT and their CRAZY HORSE TOO™ marks, and as to the origin, sponsorship or approval of Russell Road's products and services, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

52.     Russell Road had direct and full knowledge of Counterclaimants' prior use of and rights in the CRAZY HORSE TOO™ marks before the acts complained of herein. The knowing, intentional and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

53.     As a result of Russell Road's aforesaid conduct, Counterclaimants have suffered commercial damage, as well as the continuing loss of the goodwill and reputation established by Galam and CHT in its CRAZY HORSE TOO™ marks.

This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Galam and CHT has no adequate remedy at law. Galam and CHT will continue to suffer irreparable harm unless this Court enjoins Russell Road's conduct.

## THIRD COUNTERCLAIM
## FEDERAL DILUTION BY TARNISHMENT UNDER
## THE LANHAM ACT - 15 U.S.C. § 1125(C)

54.    Counterclaimants reallege and incorporate each and every allegation contained in paragraphs 1 through 53 above with the same force and effect as if said allegations were fully set forth herein.

55.    The CRAZY HORSE TOO name and mark-both in word and logo form are famous and distinctive and are entitled to protection against dilution by blurring or tarnishment.

56.    Russell Road commenced use of the "CRAZY HORSE TOO" name and marks in commerce after the CRAZY HORSE TOO name and mark had become famous and distinctive.

57.    By using the CRAZY HORSE TOO III name and marks in connection with its adult entertainment services, in which consumers are deceived as to the origin of those services, Russell Road has injured and will continue to injure the business reputation of Counterclaimants, have tarnished and will continue to tarnish the distinctive quality of the famous CRAZY HORSE TOO™ name and marks, and have lessened the capacity of the famous CRAZY HORSE TOO™ name and

marks to identify and distinguish the goods and services of Counterclaimants in violation of 15 U.S.C. § 1125(c).

58.     As a result of the tarnishment of Counterclaimants' CRAZY HORSE TOO® marks by Russell Road, Counterclaimants have suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Galam and CHT in their marks. The continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Galam and CHT have no adequate remedy at law. Counterclaimants will continue to suffer irreparable harm unless this Court enjoins Russell Road's conduct.

**FOURTH COUNTERCLAIM**

**TRADEMARK INFRINGEMENT UNDER**

**NEVADA COMMON LAW**

59.     Counterclaimants reallege and incorporate each and every allegation contained in paragraphs 1 through 58 above with the same force and effect as if said allegations were fully set forth herein.

60.     Russell Road has deliberately and willfully attempted to trade on Counterclaimants' long-standing and hard-earned goodwill in its CRAZY HORSE TOO® name and marks and the reputation Counterclaimants have established in connection with their products and services, as well as to confuse consumers as to the origin and sponsorship of Russell Road's goods and services and to pass Russell Road's products and services off as those of Galam and CHT.

61.    This unauthorized and tortious conduct has also deprived and will continue to deprive Galam and CHT of the ability to control the consumer perception of the products and services offered under the CRAZY HORSE TOO™ marks, wrongfully placing the valuable reputation and goodwill of Counterclaimants in the hands of Russell Road.

62.    The conduct of Russell Road is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Russell Road and Russell Road's adult entertainment services with Counterclaimants, and as to the origin, sponsorship or approval of Russell Road's products and services, in violation of Nevada common law.

63.    As a result of the aforesaid conduct of Russell Road, Galam and CHT have suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Counterclaimants in their marks. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Galam and CHT has no adequate remedy at law. Galam and CHT will continue to suffer irreparable harm unless this Court enjoins Russell Road's conduct.

## FIFTH COUNTERCLAIM
## CANCELLATION OF STATE MARKS FROM THE NEVADA STATE REGISTER
## PURSUANT TO NEV. REV. STAT 600.390

64.    Galam and CHT reallege and incorporate each and every allegation contained in paragraphs 1 through 63 above with the same force and effect as if said allegations were fully set forth herein.

65.    On or about June 15, 2010, Russell Road filed for two Nevada State registrations, entity numbers E0289402010-1 and E0289392010-8 respectively, for CRAZY HORSE TOO III GENTLEMAN'S CLUB AT THE PLAYGROUND.

66.    Russell Road's aforementioned State registrations for CRAZY HORSE TOO III GENTLEMAN'S CLUB AT THE PLAYGROUND are likely to cause confusion or mistake or to deceive because of their similarity with and to the CRAZY HORSE TOO™ marks owned by Counterclaimants.

67.    Counterclaimants' CRAZY HORSE TOO™ marks were the first to become famous, nationally known, and to obtain secondary meaning n the minds of consumers through use in interstate commerce, advertising, marketing, promotion and through their appearance in major motion pictures, including Ocean's Eleven in 2001.

68.    The CRAZY HORSE TOO trade name was registered with the Nevada Secretary of State with a first use date in interstate commerce of October 1, 1984.

69.    As a result of Russell Road's aforesaid conduct, the confusingly similar state registrations for the CRAZY HORSE TOO III GENTLEMAN'S CLUB AT THE PLAYGROUND mark, and all similar trademarks owned by Russell Road, should be cancelled from the Nevada register by the Secretary of State pursuant to Nev. Rev. Stat. 600.390.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SIXTH CAUSE OF ACTION
## NEVADA UNFAIR COMPETITION VIOLATIONS

70.     Galam and CHT reallege and incorporate each and every allegation contained in paragraphs 1 through 69 above with the same force and effect as if said allegations were fully set forth herein.

71.     Russell Road's use of the subject trademarks confusingly similar to the CRAZY HORSE TOO trademarks and their use in commerce is likely to cause confusion to consumers.  Russell Road's acts adopting a confusingly similar trademark were wanton, willful, deliberate and with the intent to avail itself of Counterclaimants' reputation and goodwill associated with CRAZY HORSE TOO™ trademarks and unlawfully divert to Russell Road the trade and business of Counterclaimants CHT and to confuse and mislead the trade and the public into believing that Russell Road is associated with the CRAZY HORSE TOO and the services of the CRAZY HORSE TOO.

72.     Russell Road's willful infringement of the CRAZY HORSE TOO trademarks  constitutes unlawful and unfair competition in violation of Nevada law. The CHT Counterclaimants are informed and believe that counter-defendant Russell Road will continue to do these acts unless the court orders Russell Road to cease and desist and awards damages to CHT consistent with its lawful ownership rights to the CRAZY HORSE TOO trademarks.

73.     The acts of counter-defendants Russell Road described above are unlawful and constitute unfair competition with CHT in violation of CHT's rights in the

CRAZY HORSE TOO™ trademarks and in violation of Nevada unfair competition law and counterclaimants have suffered damages in excess of jurisdictional limits of this Court in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Galam and CHT respectfully pray that the Court grant the following relief:

A.    Entry of an order (on a preliminary and permanent basis) requiring that Russell Road, Russell Road's respective officers, agents, servants, employees and/or all persons acting in concert or participation with Russell Road be enjoined and restrained from:

(1) using the CRAZY HORSE TOO™ marks or confusingly similar variations thereof, including CRAZY HORSE III, alone or in combination with any other letters, words, letter strings, phrases or designs; and

(2) using or displaying the CRAZY HORSE TOO™ marks on any websites, products, or promotional materials; doing any act or thing calculated to or likely to cause confusion or mistake in the minds of members of the public or prospective customers of the products or services of Counterclaimants as to the source of the products or services offered.

B.    Ordering Russell Road to preserve through trial and then deliver up for destruction, pursuant to 15 U.S.C. § 1118, all internet webpages / scripts / html code, articles, packages, wrappers, products, displays, labels, signs, vehicle

displays or signs, circulars, kits, packaging, letterhead, business cards, promotional items, clothing, literature, sales aids, receptacles, templates or other matter in the possession, custody, or under the control of Russell Road or its agents bearing the CRAZY HORSE TOO marks, or the CRAZY HORSE III mark, or any mark that is confusingly similar to or a colorable imitation of these marks;

C.      Directing Russell Road to provide an accounting of profits earned by Russell Road as a result of Russell Road's unlawful conduct;

D.      Ordering Russell Road to pay a judgment in the amount of the actual damages sustained by Galam and CHT under 15 U.S.C. § 1117 and Nevada law, as well as Russell Road's profits, and pre- and post-judgment interest pursuant to 15 U.S.C. § 1117, in a amount to be proven at trial;

E.      Ordering Russell Road to pay the reasonable attorneys' fees of Counterclaimants and the costs of this action pursuant to 15 U.S.C. § 1117 and/or Nevada law;

F.      Ordering Russell Road to pay punitive damages for its willful, deliberate and malicious actions;

G.      Ordering cancellation of Nevada State Entity Number E0289402010-1, the CRAZY HORSE III GENTLEMAN1S CLUB AT THE PLAYGROUND service mark, and Nevada State Entity Number E0289402010-1, the CRAZY HORSE III GENTLEMAN'S CLUB AT THE PLAYGROUND trade name pursuant to Nev. Rev. Stat. § 600.390;

H.     Awarding Counterclaimants monetary damages on each cause of action, including exemplary and punitive damages for willful infringement by counter-defendant Russell Road, and

I.      Granting Galam and CHT such other and further relief as the Court deems just and proper.

Respectfully submitted this 7th day of June, 2013.

MICHAEL R. MUSHKIN & ASSOCIATES

THE ALTMAN LAW GROUP

By: /s/ BRYAN C. ALTMAN_____
              MICHAEL R. MUSHKIN
              Attorneys for defendant
              Industrial Road 2440-2497, LLC

Appearing *Pro Hac Vice* - Application Pending:
              THE ALTMAN LAW GROUP
              Bryan C. Altman
              Michael T. Smith
              Attorneys for defendants Mike Galam,
              Victor Galam, Jacqueline Galam Barnes,
              Rhino Bare Projects, LLC,
              Rhino Bare Projects 4824 LLC,
              CRAZY HORSE TOO Gentlemen's Club
              LLC, and Canico Capital Group LLC

## **DEMAND FOR JURY TRIAL**

Defendants  Mike Galam, Victor Galam, Jacqueline Galam Barnes, Rhino Bare Projects, LLC, Rhino Bare Projects 4824 LLC, Crazy Horse Too Gentlemen's Club, LLC, Canico Capital Group, LLC and Industrial Road 2440-2497, LLC hereby demand a jury trial on all causes of action triable to a jury under state and federal laws and under the Seventh Amendment to the Constitution of the United States of America.

MICHAEL R. MUSHKIN & ASSOCIATES

THE ALTMAN LAW GROUP

Dated: June 7, 2013          By: /s/ BRYAN C. ALTMAN
                                                MICHAEL R. MUSHKIN
                                                Attorneys for defendant
                                                Industrial Road 2440-2497, LLC

                                     Appearing *Pro Hac Vice* - Application Pending:
                                                THE ALTMAN LAW GROUP
                                                Bryan C. Altman
                                                Michael T. Smith
                                                Attorneys for defendants Mike Galam,
                                                Victor Galam, Jacqueline Galam Barnes,
                                                Rhino Bare Projects, LLC,
                                                Rhino Bare Projects 4824 LLC, and
                                                CRAZY HORSE TOO Gentlemen's Club
                                                LLC and Canico Capital Group, LLC

## CERTIFICATE OF SERVICE

I am employed in Los Angeles County, State of California. I am over the age of 18 and not a party to the within action; my business address is: 6300 Wilshire Blvd., Los Angeles, CA 90048.

I hereby certify that on the 7th day of June 2013, I electronically filed the foregoing document described as **ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANTS/COUNTERCLAIMANTS MIKE GALAM, VICTOR GALAM, JACQUELINE GALAM BARNES, RHINO BARE PROJECTS, LLC, RHINO BARE PROJECTS 4824 LLC, CRAZY HORSE TOO GENTLEMEN'S CLUB, LLC, CANICO CAPITAL GROUP LLC AND INDUSTRIAL ROAD 2440-2497, LLC; DEMAND FOR JURY TRIAL** with the Clerk of Court using the court's transmission facilities (CM/ECF) system to make service, which will cause the foregoing document to be served by electronic means to those registered as an electronic case filing user with the Clerk of Court as shown in the Court's Notice of Electronic Filing at the time of electronic filing.

The following are those who are currently on the list and/or were on the list to receive e-mail notices for this case as of June 7, 2013.

**Mailing Information for a Case 2:13-cv-00776-JCM-NJK**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael R. Mushkin**
  michael@mushlaw.com,marco@mushlaw.com,darrell@mushlaw.com,kelly@mushlaw.com, shirley@mushlaw.com,karen@mushlaw.com,steven@mushlaw.com

- **Puoy K. Premsrirut**
  puoy@brownlawlv.com,chooks@brownlawlv.com,bdalby@brownlawlv.com

- **Bruno Tarabichi**
  btarabichi@owenstarabichi.com

- **Bryan C. Altman**
  bryan@altmanlawgroup.net

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing).

Michael Thomas Smith
Altman Law Group
6300 Wilshire Blvd., Suite 980
Los Angeles, CA 90048

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 7, 2013, at Los Angeles, California.


_/s/ IRENE REZNIK_____
An employee of
THE ALTMAN LAW GROUP