UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

RUSSELL ROAD FOOD AND BEVERAGE, LLC,

    Plaintiff(s),

v.

MIKE GALAM, et al.,

    Defendant(s).

2:13-CV-776 JCM (NJK)

**ORDER**

Presently before the court is defendants' motion for the court to vacate or modify preliminary injunction. (Doc. # 91). Plaintiff filed a response in opposition (doc. # 98), and defendants filed a reply (doc. # 101).

**I.   Background**

The instant case involves two Las Vegas strip clubs, each asserting claims against the other under U.S. trademark law based on the use of the term "crazy horse." Plaintiff Russell Road Food and Beverage, LLC has owned and operated the Crazy Horse III since September 2009. Defendants claim to be the rightful owners of the trademark "Crazy Horse Too."

The Crazy Horse Too opened in Las Vegas in 1984, and was initially owned and operated by Rick Rizzolo and The Power Company, Inc. In 2007, due to a violation of a plea agreement, all of the assets of the Crazy Horse Too were seized by the United States federal government. On July 11, 2011, the U.S. Trustee sold the Crazy Horse Too assets to defendant Canico Capital Group, LLC.

**James C. Mahan**
**U.S. District Judge**

On May 5, 2013, the court issued a temporary restraining order enjoining the defendants from operating their strip club under the name "Crazy Horse Too." On May 22, 2013, the court held a preliminary injunction hearing. During the hearing, defendants argued that a preliminary injunction would not be appropriate because they had evidence demonstrating that they had purchased all of the property associated with the Crazy Horse Too, including its trademarks.

Despite their claims, the documentation submitted by defendants indicated only that they had purchased the real property associated with the Crazy Horse Too. As a result, the court found that a preliminary injunction preventing defendants from using the name was warranted. The court issued the preliminary injunction that same day. (Doc. # 46).

On May 23, 2013, the court received notice that the preliminary injunction had been appealed to the Ninth Circuit. Subsequently, defendants filed a motion to reconsider the preliminary injunction, this time providing a guaranty agreement showing that the Power Company, Inc. had used the intellectual property of the Crazy Horse Too as part of the collateral for the loan upon which defendants had foreclosed.

At that time, the court did not have jurisdiction to modify the preliminary injunction due to the pending appeal before the Ninth Circuit. However, the court issued an indicative statement that the defendants' motion raised a substantial issue that may warrant reconsideration. The Ninth Circuit has now remanded the appeal for the limited purpose of allowing the district court to consider whether the preliminary injunction should be vacated.

**II.     Legal standard**

"A district court has inherent authority to modify a preliminary injunction in consideration of new facts." See *A & M Records, Inc. v. Napster*, 284 F.3d 1091, 1098 (9th Cir. 2002), citing *System Federation No. 91 v. Wright*, 364 U.S. 642, 647–48 (1961) (holding that a district court has "wide discretion" to modify an injunction based on changed circumstances or new facts.)).

"[A] motion to modify a preliminary injunction is meant only to relieve inequities that arise after the original order." *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005) (internal citation omitted). "Federal Rule of Civil Procedure 54(b) states that a district

James C. Mahan
U.S. District Judge

- 2 -

court can modify an interlocutory order 'at any time' before entry of a final judgment, and we have long recognized 'the well-established rule that a district judge always has power to modify or to overturn an interlocutory order or decision while it remains interlocutory.'" *Credit Suisse*, 400 F.3d at 1124 (9th Cir. 2005) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.,* 316 F.2d 804, 809 (9th Cir.1963)).

The Supreme Court has stated that courts must consider the following factors in determining whether a preliminary injunction is appropriate: (1) likelihood of irreparable injury if preliminary relief is not granted; (2) a likelihood of success on the merits; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008).

## II. Analysis

During the May 22, 2013, preliminary injunction hearing, the court decided to grant the injunction due to the fact that defendants provided no evidence showing that they had purchased anything other than the real property of the Crazy Horse Too. However, the guaranty documents that have since been produced by defendants demonstrate that The Power Company, Inc., the prior owner of the Crazy Horse Too trademarks, agreed to grant defendants' predecessor-in-interest a security interest in "any and all property (whether real or personal, tangible, or intangible) belonging to the corporation, as collateral security for any and all [b]orrower's indebtedness. . . ." (Doc. # 91-4 p. 1).

Defendants' claim is further corroborated by financing statements from defendant's predecessor in interest which state that "all trade names, trademarks, trade styles, service marks, domain names, . . . advertising symbols, goodwill, telephone numbers, advertising rights, . . And other media items used or intended to be used in connection with [the Crazy Horse Too]" were included as collateral. (Docs. ## 91-7 & 91-8).

Additionally, the evidence shoes that on May 31, 2006, the shareholders and board of directors of The Power Company approved a resolution authorizing a plea memorandum with the U.S. government requiring the forfeiture of $4.25 million dollars.

On August 17, 2007 an order was issued in *U.S. v. Power Company, Inc.,* Case No. 2:06-cr-00186-PMP-PAL, substituting the real property and intellectual property of the Crazy Horse Too for

1   the forfeiture obligation of The Power Company and Ric Rizzolo under the entered plea agreement
2   to pay $4.25 million dollars to the government.

3   On December 22, 2010, Judge Phillip Pro ordered that the government sell the Crazy Horse
4   Too assets. On July 11, 2011, defendant Canico Capital Group LLC, who held the deed of trust to
5   the previously discussed loan agreement, purchased the entire interest in the Crazy Horse Too that
6   was secured under the loan.

7   Therefore, this detailed chain of documents, now supplemented with the guaranty agreement
8   showing that the trademarks of the Crazy Horse Too were included in the collateral of the loan,
9   indicates that defendants are the rightful owners of not only the real property associated with the
10  Crazy Horse Too, but also its goodwill, intellectual property, trademarks and trade names. *See Mut.*
11  *Life Ins. Co. v. Menin*, 115 F.2d 975, 977 (2d Cir. 1940) ("There can be no question of the power
12  of the court to sell the 'good-will' of the bankrupt along with its other assets"); *Merry Hull & Co.*
13  *v. Hi-Line Co.*, 243 F.Supp. 45, 52 (S.D.N.Y. 1965) (holding that assets of business purchased
14  through bankruptcy sale were sufficient to convey title in trademark to defendant purchaser).

15  These evidentiary developments substantially change the foundation upon which the
16  preliminary injunction was laid. When the court issued the preliminary injunction, defendants could
17  present no evidence indicating that they had an interest in anything but the real property of the Crazy
18  Horse Too. Now it is clear that the intellectual property of the business was purchased as well, and
19  it is very likely that the trademarks have not been abandoned. In consideration of the *Winter* factors,
20  the court finds that plaintiff now lacks a significant probability of success on the merits in this case,
21  and therefore the court will vacate its order granting a preliminary injunction.

22  Accordingly,

23  IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motion for the
24  court to vacate or modify a preliminary injunction (doc. # 91) be, and at the same time hereby is,
25  GRANTED.

26  . . .

27  . . .

28

**James C. Mahan**
**U.S. District Judge**

- 4 -

1  IT IS FURTHER ORDERED that the court's order granting plaintiff's motion for
2  preliminary injunction (Doc. # 46) is VACATED.
3  DATED February 10, 2014.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 5 -