UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| RUSSELL ROAD FOOD AND BEVERAGE, LLC, | Case No. 2:13-cv-00776-RFB-NJK |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| MIKE GALAM, *et al.*, | |
| Defendants. | |

## I. INTRODUCTION

This case began as a dispute between owners of real property in Las Vegas: Plaintiff, who owns the Crazy Horse III trademark and gentlemen's club by the same name, and certain Defendants who alleged that they own the Crazy Horse Too mark and gentlemen's club. The parties initially asserted competing trademark infringement claims; Plaintiff and many of the Defendants claimed prior use of one mark over the other, and Plaintiff moved for summary judgment, as well as many of the Defendants in a joint motion. On April 13, 2016, the Court entered an order granting summary judgment in favor of Plaintiff, and finding that Plaintiff had priority of use of the Crazy Horse III trademark and that no Defendant acquired the Crazy Horse Too trademark. The Court now issues this order to clarify the liability of each Defendant.

## II. BACKGROUND

### A. Procedural History

Plaintiff Russell Road Food and Beverage, LLC ("Russell Road") filed suit in this Court on May 2, 2013 against Defendants Canico Capital Group, LLC ("Canico"), Rhino Bare Projects,

LLC, Industrial Road 2440-2497, LLC, Crazy Horse Too Gentlemen's Club, LLC, and various related entities and individuals it alleges are members of those entities. In its Complaint, Russell Road claims trademark infringement and trademark dilution and seeks to cancel Defendants' trademark registration. The parties are familiar with the procedural history set forth in the Court's prior order, up to and including the hearing and order on the cross-motions for summary judgment filed in August 2014. (ECF Nos. 273, 276).

The Court held a hearing on various disputes related to discovery and damages on February 7, 2017. (ECF No. 335). The Court stated that, in light of the representations by the parties, it would enter an order clarifying the individual liability of each Defendant, and permit the Defendants to file motions to reconsider the prior order on summary judgment, and allow Plaintiff to file motions for summary judgment as to the liability of respective Defendants. Defendants Crazy Horse Too Gentlemen's Club LLC, Michael Galam, Victor Galam, Jacqueline Galam Barnes, Rhino Bare Project 4824 LLC, and Rhino Bare Projects LLC (collectively, "Galam Defendants") filed a Motion to Reconsider the Court's prior summary judgment order on March 7, 2017. (ECF No. 336). The same day, Defendants Abraham Assil, George Eshaghian, Soleiman Nazarian, SN & GE, LLC, and West Best Capital Group, LLC (collectively, "Assil Defendants") and Defendants Canico Capital Group, LLC and Industrial Road 2440-2497, LLC ("Canico Defendants") also filed a Motion to Reconsider. (ECF No. 337). Additionally, Defendants David Hakakian, El Marino, LLC, IJ Properties, LLC, Isaac Javdanfar, Knotting Hill, LLC, Morris Nejathaim, S Double, LLC, Mehran Sadighpour, Kamran Samooha, Sefox Investment, LLC, and Hamed Yazdanpanah (collectively, "Hakakian Defendants") filed a Motion to Reconsider on March 7, 2017, as well as a request for judicial notice related to the Motion. (ECF Nos. 339, 338).

On April 4, 2017, Plaintiff filed a Response to the Galam Defendants' Motion to Reconsider (ECF. No. 345), a Response to the Hakakian Defendants' Motion to Reconsider (ECF No. 347), and a Response to the Assil Defendants' Motion to Reconsider (ECF No. 350). Also on April 4, 2018, Plaintiff filed a Motion for Summary Judgment regarding Galam Defendants' liability (ECF No. 346), a Motion for Summary Judgment regarding Hakakian Defendants' liability, (ECF No. 348), and a Motion for Summary Judgment regarding Canico Defendants' and

Assil Defendants' liability, (ECF No. 351). Galam Defendants filed a Reply to their Motion to Reconsider (ECF No. 352) and a Response to Plaintiff's Motion for Summary Judgment (ECF No. 353) on May 2, 2017. Hakakian Defendants filed their Reply to their Motion to Reconsider and Response to Plaintiff's Motion for Summary Judgment on May 2, 2017. (ECF No. 354). Assil Defendants also filed a Reply to the Motion to Reconsider (ECF No. 356) and a Response to Plaintiff's Motion for Summary Judgment (ECF No. 357) on May 2, 2017. Plaintiff filed Replies to its Motions for Summary Judgment on May 30, 2017. (ECF Nos. 358, 359, 360).

On June 21, 2017, Plaintiff filed a Motion for Preliminary Injunction (ECF No. 361). Canico Defendants filed a Response on July 5, 2017. (ECF No. 362). Plaintiff filed its Reply on July 12, 2017. (ECF No. 363). Plaintiff additionally filed a Supplemental Notice regarding the Motion for Preliminary Injunction on February 26, 2018. (ECF No. 371). The Court held a hearing on the motions on Februray 28, 2018 and took the matter under submission. (ECF No. 373).

### B. Undisputed Facts Regarding Trademark Infringement

The Court summarizes the undisputed facts as set forth in its prior order. The Crazy Horse Too club opened in 1984 at 2476 Industrial Road in Las Vegas, Nevada. Beginning in 1984, the Power Company, Inc. operated the Crazy Horse Too club and owned the Crazy Horse Too business and trademark. RicRiz, LLC ("RicRiz") was formed in 2002 and, sometime on or before October 26, 2005, became the owner of the real property located at 2440-2497 Industrial Road, which includes the property on which the Crazy Horse Too club was located.

The Crazy Horse Too club closed in September of 2006 or 2007. On August 16, 2007, the real property at 2440-2497 Industrial Road and the Crazy Horse Too business, including the Crazy Horse Too trademark, were forfeited to the United States government. These assets were ordered to be sold and applied to certain forfeiture and restitution obligations in connection with the judgments entered in a criminal case involving the owners and operators of Crazy Horse Too.

However, the government still had not sold the property after three and a half years, and on February 28, 2011, the court in the criminal case permitted Canico to conduct a non-judicial foreclosure sale of the property. On July 1, 2011, Chicago Title of Nevada, Inc., on behalf of Canico, conducted a foreclosure sale of the real property secured by a Deed of Trust, and the real

property was sold to Industrial Road 2440-2497, LLC. No Defendant in this case was a party to the underlying the Deed of Trust.

On September 4, 2009, after the Crazy Horse Too club had closed and before the purchase of the real property at the foreclosure sale, Russell Road began using the "Crazy Horse III" mark in connection with its gentlemen's club by the same name in Las Vegas. There were no other strip clubs in Las Vegas operating under the Crazy Horse name when Russell Road opened the Crazy Horse III club on September 4, 2009, and Russell Road has continuously used the Crazy Horse III mark since that date. Russell Road has also invested significant resources in promoting its Crazy Horse III club, including through advertising and booking celebrities to appear at the club.

After purchasing the real property at 2440-2497 Industrial Road, certain Defendants began using the Crazy Horse Too mark to promote the re-opening of the Crazy Horse Too club in April 2013. The Court now makes findings to determine which Defendants were involved in the use of the Crazy Horse Too mark following Russell Road's prior use.

### C. Undisputed Facts Regarding Involvement of Galam Defendants

Defendant Michael Galam and Defendant Crazy Horse Too Gentlemen's Club LLC ("Crazy Horse Too GC"), in their Motion to Reconsider and Response to Plaintiff's Motion for Summary Judgment, admit to use of the Crazy Horse Too mark after Russell Road established prior use and trademark priority. Michael Galam managed and ran the Crazy Horse Too GC. This included approving marketing and promotional activities regarding the opening and operation of the club. Defendant Rhino Bare LLC ("Rhino Bare") and Defendant Rhino Bare 4824 LLC ("Rhino 4824") admit to participation in the decision to use the Crazy Horse Too mark after Russell Road established prior use and trademark priority.

Regarding Victor Galam's involvement, the Court finds the following facts to be undisputed. Victor Galam had a 85% ownership interest in Crazy Horse Too GC. He owned and used the Crazy Horse Too trademark. He used the Crazy Horse Too trademark in commerce prior to the year 2013. Victor Galam submitted an Affidavit for an exotic dance license for the Crazy Horse Too GC in October 2014. (ECF No. 346-17 at 2). This affidavit indicated that he was the 100% and sole owner of Rhino Bare, which holds a 59.93% interest in Canico. On October 22,

2014, Victor Galam signed a lease with Industrial Road on behalf of Crazy Horse Too GC that included an addendum of trademark license to the GC. (ECF No. 301-1 at 30, 32). Victor Galam indicated on the lease that he was a "manager" of Crazy Horse Too GC. (ECF No. 301-1 at 30, 32).

Regarding Jacqueline Galam Barnes' involvement, the Court finds the following facts to be undisputed. Jacqueline Galam Barnes had a 5% ownership interest in the Crazy Horse Too GC. She admitted that she did own and use the Crazy Horse Too trademark. She applied for licenses under the Crazy Horse Too name. She admitted to participating in other licensing and permitting efforts before local authorities in support of the opening and operation of the Crazy Horse Too Gentlemen's Club. She also used the Crazy Horse Too trademark in commerce prior to the year 2013.

**D. Undisputed Facts Regarding Involvement of Hakakian Defendants**

Hakakian Defendants include David Hakakian ("Hakakian"), El Marino, LLC ("El Marino), Isaac Javdanfar ("Javdanfar"), IJ Properties, LLC ("IJ Properties"), Knotting Hill, LLC ("Knotting Hill"), Morris Nejathaim ("Nejathaim"), S Double, LLC ("S Double"), Mehran Sadighpour ("Sadighpour"), Kamran Samooha ("Samooha"), Sefox Investment, LLC ("Sefox"), and Hamed Yazdanpanah ("Yazdanpanah").

The Court finds the following facts to be undisputed. Hakakian is manager of El Marino, which is a former or current member of Canico. Yazdanpanah is a manger of Knotting Hill, which is a former or current member of Canico. Nejathaim is a manager of Sefox, which is a former or current member of Canico. Javdanfar is a manager of IJ Properties, which is a former or current member of Canico. Javdanfar himself is also a former or current member of Canico. Sadighpour is a member of S Double, which is a former or current member of Canico. Sadighpour himself is a former or current member of Canico. Samooha is a former or current member of Canico.

Collectively, Hakakian Defendants purchased the real property at 2476 Industrial Road for $3 million, which included the good will and "all intellectual property" of the Crazy Horse Too Gentlemen's Club in 2009. At the time of the purchase, these Defendants were members of Canico, either as individuals or through the LLCs they managed. As of July 23, 2009, Canico intended to

reopen the Crazy Horse Too GC in Las Vegas, Nevada. The individual Defendants – Hakakian, Javdanfar, Nejathaim, Sadighpour, Samooha, and Yazdanpanah – voted to transfer their ownership interest in Canico to Rhino Bare in February 2013, prior to the Crazy Horse Too Gentlemen's Club opening. On April 22, 2016, in separate litigation, a California state court found that the ownership transfer was ineffective as to the individual Defendants' voting rights, although the transfer to Rhino Bare of economic interest remained valid.

### E. Undisputed Facts Regarding Involvement of Assil Defendants and Canico Defendants

The Assil Defendants include Abraham Assil ("Assil"), George Eshaghian ("Eshaghian"), Soleiman Nazarian ("Nazarian"), SN & GE, LLC ("SN & GE"), and West Best Capital Group, LLC ("West Best").

Regarding Assil's involvement, the Court finds the following facts to be undisputed. Assil is a manager of Defendant West Best. West Best is a member of Defendant Canico. Assil is also a manager of Defendant Canico. He was "a driving force and principal decision maker" for both Canico and West Best. (ECF No. 102 at 2; ECF No. 124 at 2). As manager of West Best, he contributed approximately $5.5 million toward the purchase of the real property located at 2476 Industrial Road.

Assil, after he (as manager of Canico) became an owner of the Industrial Road real property in 2011, contributed to spending over $1.7 million to obtain City approvals that would enable the re-opening "of that Property's most valuable asset, a nightclub that used to be very popular and successful." (ECF No. 146-1 at 12). In 2013, Assil as a manager of Canico rejected an offer from Michael Galam to purchase the Industrial Road real property. In October 2014, as manager of Canico, Assil also signed a lease between Industrial Road and Crazy Horse Too GC, including an addendum licensing the Crazy Horse Too mark to the lessee, as well as an Affidavit in support of Crazy Horse Too GC's exotic dance license and lease. (ECF No. 301-1 at 27, 30; ECF No. 351-5 at 2).

Regarding Eshaghian's involvement, the Court finds the following facts to be undisputed. Eshaghian is a manager of Defendant SN & GE LLC ("SN & GE"). SN & GE is a member of

Defendant Canico. Eshaghian is also a manager of Defendant Canico. He was "a driving force and principal decision maker" for both Canico and SN & GE. (ECF No. 102 at 2; ECF No. 124 at 2). In 2013, Eshaghian as a manager of Canico rejected an offer from Michael Galam to purchase the Industrial Road real property. Michael Galam purported to remove Eshaghian as a manager of Canico on March 18, 2013, prior to the reopening of the Crazy Horse Too Gentlemen's Club which occurred in June 2013. Nonetheless, Eshaghian signed a lease between Industrial Road and Crazy Horse Too GC in October 2014 as a manager of Canico, which included an addendum licensing the Crazy Horse Too mark to the lessee. (ECF No. 301-1 at 27, 30).

Regarding Nazarian's involvement, the Court finds that the only undisputed fact is that Nazarian is a manager of SN & GE.

Canico Defendants include Canico Capital Group, LLC and Industrial Road 2440-2497, LLC ("Industrial Road").

The Court finds the following facts to be undisputed regarding Canico's involvement. Canico is a managing member and sole owner of Industrial Road. Canico owns the Crazy Horse Too mark. Canico admitted to and did use the mark in commerce prior to the year 2013. Canico further admitted to participating in the decision to adopt and use the Crazy Horse Too name.

The Court finds the following facts to be undisputed regarding Industrial Road's involvement. Industrial Road owns trademark rights in the Crazy Horse Too mark. Industrial Road admitted to and did use the mark in commerce prior to the year 2013. On September 24, 2012, Industrial Road, on behalf of Crazy Horse Too GC, filed to register the Crazy Horse mark with the Nevada Secretary of State. Further, Industrial Road entered two leases with Crazy Horse Too GC, leasing the real property for the purpose of operating the Crazy Horse Too Gentlemen's Club and using the Crazy Horse Too mark. The first lease was executed in approximately March 2013, and the second lease was executed in October 2014. Industrial Road participated in the decision to adopt and use the Crazy Horse Too mark.

### III. LEGAL STANDARDS

#### A. Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011).

When the party moving for summary judgment also bears the burden of persuasion at trial, "to prevail on summary judgment it must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it." Shakur v. Schriro, 514 F.3d 878, 890 (9th Cir. 2008) (citation and internal quotation marks omitted); see also So. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003) (moving party with burden of persuasion at trial must "establish beyond controversy every essential element" of its claim) (quotation marks omitted). To make this showing, the moving party "bears the initial burden of establishing the absence of a genuine issue of fact on each issue material to" its claim or affirmative defense. Houghton v. South, 965 F.2d 1532, 1537 (9th Cir. 1992). If it does so, the opposing party cannot simply rest on its pleadings, but "must set forth specific facts," by affidavit or otherwise, "showing that there is a genuine issue for trial." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006) (citation and quotation marks omitted).

Where the party seeking summary judgment does not have the ultimate burden of persuasion at trial, it "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its [initial] burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. If it fails to carry this initial burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Id. at 1102-03. If the movant has carried its initial

burden, "the nonmoving party must produce evidence to support its claim or defense." Id. at 1103. However, the ultimate burden of persuasion on a motion for summary judgment rests with the moving party, who must convince the court that no genuine issue of material fact exists. Nissan Fire, 210 F.3d at 1102.

### B. Officer Liability for Trademark Infringement

To prevail on a trademark claim, a plaintiff must establish (1) a protectable ownership interest in the mark, and (2) that defendant's use will likely cause consumer confusion. So. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 929 (9th Cir. 2014). "Use in commerce" means more than the mere reservation of a right in a mark; such use requires the bonafide use of a mark in the ordinary course of trade. Id. at 1203 (quoting 15 U.S.C. § 1127). To determine whether a use in commerce has been made, the court must examine the totality of the circumstances. Id. at 1205.

Any person that, uses in commerce – in connection with any good or service – a name likely to cause confusion may be held liable under the Lanham Act. Committee for Idaho's High Desert, Inc. v. Yost, 92 F.3d 814, 823 (9th Cir. 1996) (quoting 15 U.S.C. § 1125(a). "A corporate officer or director is, in general personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." Id. at 823-24 (9th Cir. 1996) (citations omitted); see also Martinizing Int'l, LLC v. BC Cleaners, LLC, 855 F.3d 847, 852 (8th Cir. 2017) ("The general rule is that a corporate officer or limited liability company member is personally liable for trademark infringement if he or she directly participates in the infringement.") (citation omitted). This rule applies to trademark infringement and unfair practices cases. See Yost, 92 F.3d 823-24 (applying this principle to hold that the district court erred in dismissing individual appellant corporate officers who may have been found liable acting in their corporate capacities).

"Cases finding personal liability on the part of corporate officers have typically involved instances where the defendant was the guiding spirit behind the wrongful conduct, or the central figure in the challenged corporate activity." Facebook, Inc. v. Power Ventures, Inc., 844 F.3d 1058, 1069 (9th Cir. 2016), cert. denied, 138 S. Ct. 313 (2017) (quoting Davis v. Metro Prods., Inc., 885 F.2d 515, 523 n.10 (9th Cir. 1989) (quotation marks omitted).

### C. Lessor Liability for Trademark Infringement

"[L]iability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another. . . . Thus, if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit." Inwood Lab., Inc. v. Ives Lab., Inc., 456 U.S. 844, 853–54 (1982). Although Ives dealt with Section 32 of the Lanham Act, its formulation of contributory infringement has been extended to cases arising under Section 43(a) of 15 U.S.C. § 1125. See American Tel. and Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1421 (3rd Cir. 1994).

### D. Judicial Estoppel

For judicial estoppel to apply, the following must be true: (1) the party to be estopped asserted an earlier position that is clearly inconsistent with a position it later attempts to assert; (2) the court relied on the earlier position; and (3) allowing the party to change its position would be inequitable. See United States v. Ibrahim, 522 F.3d 1003, 1009 (9th Cir. 2008) (internal citations omitted).

### E. Motion for Preliminary Injunction

A preliminary injunction is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. 7, 20 (2008)). The Ninth Circuit has also affirmed that a preliminary injunction may issue under the "serious questions" test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011). According to this test, a plaintiff can obtain a preliminary injunction by demonstrating "that serious

questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." Id. at 1134-35 (citation omitted).

**IV. DISCUSSION**

The Court will first analyze the liability of the various Defendant groups, and proceed to analyzing Plaintiff's request for preliminary injunction.

**A. Liability of Galam Defendants**

As set forth above, a defendant is liable for trademark infringement if plaintiff establishes (1) a protectable ownership interest in a mark, and (2) that defendant's use will likely cause consumer confusion. So. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 929 (9th Cir. 2014). Here, for any manager or member of an LLC to be held liable for trademark infringement, the individual must authorize or direct the use of the infringing mark in commerce. Id.; see also Committee for Idaho's High Desert, Inc. v. Yost, 92 F.3d 814, 823 (9th Cir. 1996).

The Court finds that Michael Galam, Crazy Horse Too GC, Rhino Bare, and Rhino 4824 effectively and correctly concede liability for trademark infringement in their Motion to Reconsider and Response to Plaintiff's Motion for Summary Judgment. There is no dispute that these Defendants either directly used the infringing mark in commerce, or authorized the use of the infringing mark in commerce. Therefore, these Defendants are liable for infringing the Crazy Horse III mark.

As to Victor Galam and Jacqueline Galam Barnes, the Court also finds these Defendants liable for trademark infringement. The undisputed evidence in the record demonstrates that these Defendants participated in the formation of Crazy Horse Too GC, a single purpose LLC. That single purpose was to operate the Crazy Horse Too Gentlemen's Club and use the Crazy Horse Too mark; such operation was per se infringement upon the Crazy Horse III mark. They both also individually engaged in efforts to support the opening and operation of the club—including its use of the infringing mark.

/ / /

/ / /

The Court therefore grants summary judgment in favor of Plaintiff and against Michael Galam, Crazy Horse Too GC, Rhino Bare, Rhino 4824, Victor Galam, and Jacqueline Galam Barnes.

### B. Liability of Hakakian Defendants

The Court finds that Plaintiff does not introduce any facts that distinguish the liability of any of the Hakakian Defendants; therefore the Court analyzes these Defendants collectively.

Construing the proffered evidence in the light most favorable to these Defendants, the Court finds there is a genuine dispute of fact as to the liability of any individual or LLC within this group. Plaintiff does not introduce any evidence to dispute Hakakian Defendants' contention that they believed their February 2013 transfers of interest out of Canico were at the time invalid. Indeed, as the California state court did not find these transfers ineffective until April 2016, a reasonable juror could find that Hakakian Defendants believed that they had no voting rights between April 2013 and April 2016, which encompassed the period of infringement.

The Court, however, recognizes that, due to the various positions these Defendants took during litigation, such as joining motions with other Defendants when trademark ownership was still contested, discovery may not have yielded specific evidence as to the liability of each of the Hakakian Defendants. As the Court stated during the hearing on these motions, Plaintiff may conduct discovery to more specifically address the potential liability of each of the Hakakian Defendants.

For these reasons, Plaintiff's Motion for Summary Judgment is denied against the Hakakian Defendants.

### C. Liability of Assil Defendants and Canico Defendants

The Court finds that the question of liability of the Assil Defendants presents a closer call than the questions of liability regarding the Defendants discussed above. The Court finds that there are genuine disputes of material facts regarding the Assil Defendants regarding the extent of their involvement in the infringing activity and the timing of their involvement in the use or preservation of the infringing mark. The Court will analyze each of the respective Assil Defendants in turn.

Assil argues that in 2013 Michael Galam attempted to take over control of Canico, but Assil does not offer facts to establish that his management of Canico, and/or his management of West Best as a member of Canico, was not effective prior to 2013. The 2012 filing by Industrial Road, wholly owned by Canico which Assil co-managed, suggests that Assil was involved in the opening of the club. However, the Court does not have sufficient undisputed facts to determine as a matter of law that Assil was involved in infringing activity. It is also unclear if the infringing activity included periods before and after the period noted by the Court in its previous order. Therefore, summary judgement is denied as to Defendant Assil.

The Court makes similar findings with respect to Eshaghian. The Court finds that there is a genuine issue of disputed fact as to the extent of Eshagian's involvement in infringing conduct and the timing of his potential involvement in infringing activity. The undisputed facts demonstrate that Eshaghian was involved with the Crazy Horse Too GC via Canico prior to 2013, as Eshaghian was a manager of Canico before Michael Galam allegedly took over control and when infringing acts had already commenced. Eshaghian also signed the October 2014 lease between Industrial Road and Crazy Horse Too GC, as manager of Canico. These facts, however, are insufficient to establish as a matter of law that Eshaghian, either individually or in his capacity as manager of SN & GE, directed or authorized the infringement of the Crazy Horse III mark.

The Court also finds that there is a genuine issue of disputed fact as to the involvement of Nazarian in the infringing activity in this case. The undisputed facts merely show that Nazarian was a manager of SN & GE; however, his role as manager alone, unconnected to any independent act to establish, promote, or operate the Crazy Horse Too GC entity, does not warrant summary judgment in favor of Plaintiff. As with other Defendants, the Court finds that discovery may yield evidence of potential liability for infringement, but makes no such finding at this stage.

With regard to the entities West Best and SN & GE, the Court finds that the undisputed facts demonstrate that Assil and Eshaghian managed these entities in a manner that implicates liability for infringement but does not establish liability as a matter of law. These entities were members of Canico when Industrial Road, wholly owned by Canico, filed for use of the Crazy

Horse Too mark in September 2012. However, the Court does not find the undisputed facts sufficient to establish the liability of these entities as a matter of law.

The Court now turns to the Canico Defendants. The Court finds that both entities are liable for trademark infringement. Canico attempted to clarify that it owned the Crazy Horse Too mark only to the extent it owned Industrial Road. However, at all relevant times, Canico acted through Industrial Road, as Canico has been the manager and sole owner of Industrial Road. Regardless of whether Assil and Eshaghian or Michael Galam was managing and controlling Canico, the entity was engaging in direct infringement. There is no dispute that Industrial Road applied for registration of the Crazy Horse Too mark in September 2012. Further, there is no dispute that Industrial Road entered two leases with the Crazy Horse Too GC for the purpose of operating the Crazy Horse Too Gentlemen's Club and licensing the use of the Crazy Horse Too mark. The Court also recognizes that, in earlier phases of the litigation, Canico and Industrial Road joined in motions with other Defendants acknowledging the use and ownership of the Crazy Horse Too mark and attempting to assert priority over the Crazy Horse III mark.[1] No reasonable juror could find that either of the Canico Defendants did not participate in the infringement of the Crazy Horse III mark.

Summary judgment is denied against Defendants Assil, Eshaghian, West Best, SN & GE, and Nazarian. Summary judgment is granted in favor of Plaintiff against Canico and Industrial Road.

**D. Plaintiff's Motion for Preliminary Injunction**

The Court finds no basis for enjoining the sale of the Industrial Road real property. However, the Court orders, and the Canico Defendants have consented to, preserving and not disposing of any assets acquired from the potential sale of the subject property in this case. The Court finds that the property at issue is a substantial and central asset of the Canico Defendants

---

[1] The Court further finds that Galam Defendants and Canico Defendants should be and are judicially estopped from contesting liability based upon their use of the infringing mark. They have taken repeated positions throughout this litigation based upon their use of the infringing mark and obtained favorable holdings based upon this position. For example, the Defendants convinced the Court to vacate its initial preliminary injunction order, See ECF No. 127, based upon prior and continued use and ownership of the mark.

and that these entities would not have significant assets to pay any award without the proceeds from the sale of the property. The Court also finds that the Plaintiff has succeeded on the merits as to some claims and will likely succeed as to other claims regarding their trademark infringement claims. The Court further orders Canico Defendants to refrain from making any encumbrances upon the Industrial Road real property.

V. CONCLUSION

For the reasons stated in this opinion,

**IT IS ORDERED** that Defendants' Motions to Reconsider and Request for Judicial Notice (ECF Nos. 336, 337, 338, and 339) are DENIED AS MOOT based upon the rulings on the motions for summary judgment.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 346) is GRANTED as to all Galam Defendants.

**IS IT FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 348) is DENIED without prejudice as to all Hakakian Defendants.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 351) is DENIED without prejudice as to the Assil Defendants and GRANTED as to Canico Defendants.

**IT IS FURTHER ORDERED** that the Motion for Preliminary Injunction (ECF No. 361) is DENIED as moot given the consent of the Defendants to the preservation of any assets or proceeds from the sale of the subject property in this case.

**DATED**: March 27, 2018.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**